Mr. Justice WAYFTE
 

 delivered the opinion of the court.
 

 This case has been brought to this court by writ of error from the Circuit Court of the United States for the district of California.
 

 The circumstances disclosed by the record, and the documentary evidence introduced by the parties in support of their respective rights to the land' in controversy, make an extended statement necessary, in order that the points decided may be understood.
 

 The defendant in error brought into the Circuit Court an action o'f ejectment against Wyman and others, tenants of the plaintiff in error, to recover the possession of lot USTo. 464? it being a subdivision of a lot of one hundred varas square, numbered 456, of the San Francisco beach and water lots. Field, • the plaintiff in error, was admitted to defend, and a verdict having been given for the plaintiffs below, it was agreed by a stipulation in the record that this writ of error should be prosecuted by Field alone, without'joining the other defendants.
 

 Both parties claimed title .'under an act of the Legislature of California, passed the 26th March, 1851, entitled “An act to provide for the disposition of certain property of the State of California,” the provisions of which, so far as they relate to this cause, are as follows:
 

 
 *325
 
 The first section of the act describes the land to be 'disposed of; and the second section'is, that'“the use and Occupation of all the land described in the first section of the act is hereby granted to the city of San Erancisco for the term of ninety-nine years from the date of this act, except as hereinafter provided; all the lands mentioned in the first section of this act, which have been sold by authority of the ayuntamiento, or town or city council, or by any alcalde of the said town or city, at public auction, in accordance with the terms of the grant known as Kearney’s, grant to the city of San Erancisco, or which have been .sold or granted by any alcalde of the said city of San Erancisco, and confirmed by the ayuntamiento, or town or city council thereof;
 
 and also registered or recorded in some book of record now in the office or custody or control of the recorder of the county of San Francisco, on or before the third day'of April, A. JD. one thousand eight hundred and fifty, shall be and the same are hereby granted and confirmed to the purchaser or purchasers or grantees aforesaid, by the Slate relinquishing the use and occupation of the same and her interests therein to the said purchasers or grantees, and each of them, their heirs and assigns, or any person or persons holding under them, for the term of ninety-nine years from and after the passage of this act.”
 

 Sec. 3. “ That the original deed, or other written or printed instrument of conveyance, by which any of the lands mentioned in the first section of this act were conveyed or granted by such common council, ayuntamiento, or alcalde, and in case of, its loss, or not being within the control of the party, then a record copy thereof, or a record copy of the, material portion thereof, properly authenticated, may be read, in evidence in any court of justice in this State, upon the trial of any cause in which the contents may be important to be proved, and shall be
 
 prima fade
 
 evidence of title and possession, to enable the plaintiff to recover the possession of the land so granted.”
 

 Kearney’s grant mentioned in the act was read in evidence at the trial by the plaintiffs in the action; it is dated March 10th, 1847, and is as follows:
 

 . “I, Brigadier General S.
 
 W.
 
 Kearney, Governor of California, by virtue of authority in me vested by the President of the United States of America, do hereby grant, convey, and release, unto the town of San Erancisco, the.people or corporate authorities thereof, all the right, title, and interest thereof, of. the Government of the United States, and of the Territory of California, in and to the beach and water lots on the east front of said town of San Francisco, including between the points known as the Rincon and Eort Montgomery, excepting such lots as may be selected for the use of the General- Gov
 
 *326
 
 ernment by the senior officers of the army and navy now there, provided the- said ground hereby ceded shall be' divided into lots, and sold by public auction to the highest bidders, after three months’ notice previously given. The proceeds of said sale to be for the benefit of the town of San Francisco.”
 

 It was agreed by the parties at the trial that the lot sued for is included in the first section of the act of March 26, 1851, already cited, and also within the locality of the Kearney grant; that it is no part'of any Government reservation; and that on the 9th of September, 1850, when California was admitted as a State into the Union, the lot was below high-water mark.
 

 In order to show themselves entitled to the lot in question under the second section of the act cited, the plaintiffs below produced the following documents:
 

 1. A grant by John W. Geary, first alcalde of San Francisco, to Thomas Sprague, dated January 3d, 1850, reciting the Kear-ney grant, calling it a “decree,” and that by virtue thereof, and by direction of the ayuntamiento, a certain portion of said ground, duly divided into lots as aforesaid, after notice, as required by the “decree” or grant, had been exposed to sale at public auction, in conformity with it, on the 3d day of January, 1850; and that one of the lots, numbered on the map 464, had been sold to Thomas Sprague for $1,700, for which he had paid in cash $425, and had obliged himself to pay the sum of $1,275 in three equal instalments, on the 3d of April, 3d of July, and the 3d of October; that Sprague then received a grant for the lot to him; his heirs and assigns, forever, of all the estate that the town of San Francisco had in the same, as fully as the same was held and possessed by it, subject to a proviso that the grant was to be void for failure to pay the instalments.
 

 The foregoing document Or grant was not recorded or registered, nor was any evidence given that three months’ notice of the sale had been given, other than the recitals in the grant.
 

 2. The plaintiff introduced a deed from Sprague to Seabury, Gifford, and one Horace Gushee, dated May 17, 1850, conveying to them in fee all his right and title to the lot sued for, and also another lot, Ho. 450, for the sum of $4,000, with a provision that they should pay $1,560 of the instalments payable to the town.
 

 The plaintiffs then introduced a deed from Horace Gushee to the plaintiff Parker, conveying to Parker in foe all his right and title to the water lot Ho. 464, for the consideration of $100, which was dated April 20th, 1855.
 

 Receipts by the city officers for three of the instalments of
 
 *327
 
 the purchase-money, dated the 3d April, 3d July, and 3d October, were endorsed upon the grant.
 

 The plaintiffs then rested their case upon the foregoing evidence.
 

 Two grounds of defence were relied upon by the defendants: Eirst, that the Geary grant was not within the act of March 26, 1851, for want of the notice of sale required by the Kearney grant; and also that it had never been registered and recorded, as the act required, in some book of record now in the office now in the custody or control of the recorder of the county of San Francisco, on or before the third day of April, one thousand eight hundred and fifty. Second, that the defendants and those under whom they claimed had a good title to the premises under the provisions of the act of March 26, 1851. They also relied upon a possession of the premises for more than five years prior to the institution of the suit. To prove their title, the defendants gave in evidence the following documents :
 

 1st. A grant of the lot one hundred varas square, (of which the lot in question was a subdivision,) dated September 25th, 1848, by Leavenworth, alcalde of San Francisco, to Parker, upon the petition of the latter, both written on the same sheet, as follows:
 

 “To T. N. Leavenworth, Alcalde and Chief Magistrate, district San Francisco:
 

 “Your petitioner, the undersigned, a citizen of California, respectfully prays the grant of a title to a,certain lot of land in the vicinity of the town of San Francisco, containing one hundred varas square, and bounded on the north by Washington street, on the west by a street dividing said lot from the beach and water survey, on the south by Clay street, and on the east, by unsurveyed land, and numbered on the plan marked on page one (1) of district records as four hundred and fifty-six (456.) William C. Parker.”
 

 On the same day the grant was made, as follows:
 

 “TERRITORY OE CALIFORNIA,
 

 “District of San Francisco, Sept.
 
 25,
 
 A. D.
 
 1848.
 

 “Know all men by these presents, that William (C. Parker has presented the foregoing petition for a grant of land in the vicinity of the town of San Francisco, as therein described; therefore I, the undersigned, alcalde and magistrate of the district of San Francisco, in Upper California, do bereby give, and grant, and convey, Unto the said William C. Parker, his
 
 *328
 
 heirs and assigns, forever, the lot of ground as set forth in the petition, by a good and sufficient title, in consonance with the established customs and regulations, being one hundred varas square, lying and being situated in the eastern vicinity of San Erancisco, and outside the limits of the water-lot survey.
 

 “In testimony whereof, I have hereunto set my hand, as al-ealde and chief magistrate of the district aforesaid.
 

 “Done at San Erancisco, the day and year above written. .
 

 ' “ T. M. LEAVENWORTH.
 

 “Recorded in the alcalde’s office, in book E of land titles, on page number 18,- at 10| o’clock, A. M., November 28,1849.
 

 “Office First Alcalde.
 
 A. Bowman,
 
 Beg. Cl’k.”
 

 Then the defendants called Parker as a witness, to prove the execution of the grant in the manner and at the time as has been just stated, producing at the samé time a deed from Parker to Leavenworth, dated the 26th September, 1848, and Parker certified it had been executed by him.
 

 It was also proved that Leavenworth conveyed the premises to George W. Wright, by deed dated the 1st December, 1849. Wright conveyed one undivided half of the lot in fee to Charles T. Botts, and the other undivided half of the same to Edward Eield, the now plaintiff in error, except two lots or subdivisions of the same, numbered 467 and 468. A deed from Botts, dated 1st October, 1852, to Joseph C. Palmer and Wright, conveying to them in fee the one undivided half of said lot, except the subdivisions of it 467 and 468, for the consideration of $40,000, reciting the premises conveyed to be ten water lots, and that Botts derived title through the deed from Wright to him; and Palmer then conveyed the last-mentioned premises as they held them to Eield, the plaintiff in error, for $75,000, without any recital of the preceding conveyances, and the same was recorded on the 12th January, 1853, the day of the execution ■ of the deed. It is as well to remark, that all of the deeds just mentioned were in the county recorder’s office. It was also agreed by the parties, in writing, that the original defendants in the action were in possession of the premises under leases from Eield, the plaintiff in error, the production of the leases being dispensed with.
 

 The defendants also gave in evidence book B of the district records, page 1, kept in the alcalde’s office, and as such turned over to the recorder of the county of San Erancisco, upon the organization o± that office in May, 1850, to prove from it that there had been a certificate of the Leavenworth conveyance of • the land to Parker, contemporary with the execution of it.
 
 *329
 
 The authenticity of the book B was proved by the testimony of witnesses who had been connected with the office of the alcalde, and'afterwards with the office of the recorder of the county. Other testimony was also introduced by the defendants, of another book, F, kept by Alcalde G-eary, the predecessor of Leavenworth, in which grants issued by his predecessor were recorded at length, which was turned over to the county recorder at. the same time with book' B, in which there was a literal transcript of Parker’s original petition and Leavenworth’s grant, as they have been already recited..
 

 The defendants also gave in evidence a resolution of the ayuntamiento or town council of San Francisco, of the 11th October, 1848, confirming the grants of Leavenworth to several parcels of land adjacent to the town, on the ground .that Leavenworth had made them for the purpose of raising funds to defray the necessary expenses of the town and district. A deed from the board of California land commissioners, acting under the act of May 18, 1853, by which they were authorized to sell the interest of the State in the San Francisco-beach and water-lot property, was also put in evidence by the defendants, which conveyed in fee to Joseph Palmer and Edward C. Jones all the right, title, and interest, of the State of California in the aforesaid ten water lots, for the consideration of $1,425. It was also proved that Palmer, Cook, & Co., of which Palmer, "Wright, and Jones, were members, commenced improving the lot in May, 1850, more than five years before the commencement of the suit, which was on the 7th June, 1855, and that they shortly afterwards leased it to one Gordon, who erected on it valuable improvements; and that they, and others claiming under'them, had ever since occupied the premises.
 

 A resolution of the town council, passed on the 5th October, 1849, requesting the alcalde to advertise the sale at the earliest moment, was also put in proof by the defendants, to show that the Geary grant of January 7, 1850, had been made without three months’ notice of the sale having been given. Then, at this stage of the trial, the plaintiffs were permitted to discredit the fact that Leavenworth’s grant to Parker had been recorded, as has been stated, by showing that there had been mistakes in recording grants in the book of records, and that there were several entries in the book purporting to be copies of grants by Leavenworth in 1849, after he was out of office, which the court permitted to be done — the defendants objecting — on the ground that, by reading from the book the grant to Parker, the defendants had made the entire book evidence;
 
 and that the plaintiffs might read other entries in it, without any proof that the grants had been issued, or in fact dated, in the year
 
 1849. The
 
 *330
 
 court also permitted Parker, the original grantee of Leavenworth, to be examined as a witness; and also Clark, a member of the town council, to prove that there had been fraud, in the issue and confirmation of the Leavenworth grant. And upon the defendants objecting to the admissibility of such evidence,the court overruled their objection, saying “that the act of March 26, 1851, under which the plaintiffs and defendants claimed to have a title to the premises in dispute, was intended to confirm only honest titles, and that the plaintiff might impeach the Leavenworth grant to Parker, and the confirmation of it by the town council, by showing fraud.” And under this ruling of the court, the plaintiffs were permitted to read as evidence from. the books of records B and F, and from other books purporting to be minutes of grants made by Leavenworth to one Clark, to Jones and Buchelin, prior to October 11, 1848, intending to show by them that the members of the council who voted for the resolution of that date held divers grants which were confirmed by it, and had therefore acted ’audulently. And that was done without any proof of identity between the supposed grantees and other members of council, and without producing any originals of the supposed grants, or proving that any such grants were made. The witnesses, however, introduced to pi’ove fraud in the issue of the Leavenworth grant, denied positively that it existed.
 

 We do not think a more extended statement from the record necessary for the conclusion at which we have arrived in this case. That which has been given is sufficient for the construction of the act of March 26, 1851, under which both parties claim the premises in dispute, and for the decision of the exception taken by the defendants to the ruling of'the court in respect to the admissibility of witnesses to.prove that Leavenworth had practised a fraud in issuing a grant to Parker for the lot 456.
 

 It is admitted, that neither the plaintiff nor defendant could claim a title to any part of that lot under these alcalde, grants, unless they can be brought within the act of March 26,' 1851. ■ (Law? of California, 764.) The court below said, in its charge to the jury, that neither of the alcaldes had any power to grant land, and .that no estate passed by either of their grants. These documents are only to be considered as ear-marks to designate the legislative grantees, who were intended to take ■ under the act of March 26, 1851. Both parties in the suit bringing themselves within the classes designated,
 
 the defendants, being in possession, as has been ascertained by the evidence, would on principles of law be entitled to a verdict.
 
 In this the court ’ was correct; and its first obligation, when the, case was sub?
 
 *331
 
 mitted to the jury, was to determine, by its construction of the act, whether both parties or either of them had, by their documentary evidence, been brought within the classes of grantees designated by the act. This, however, it did not do; but leaving that question undecided, after permitting the plaintiffs to introduce witnesses to prove that the Leavenworth grant had been fraudulently issued by him, it submitted the ease to the jury, making it not only competent to find the fact of fraud, but constituting the jurors judges of the legal question, whether the plaintiff who had alleged the fraud was within the classes of grantees which the Legislature meant to confirm, and that the defendant’s alcalde grant was not comprehended by the legislative act — thus giving to a party who might not be able to claim a title under the act a chance, by the verdict of a jury, to dispossess another, also without a title under it, who. had just been said by the court, in a controve'rsy between them for the land, would be entitled to a verdict in virtue of his being in possession of it. If the plaintiff had no title under the act, though the defendant also was without one, the former could have no complaint against him, nor any legal right to recover in ejectment land of which the defendant was in possession. The court, in this part of its ruling, made the charge of fraud the turning-point in the cáse, and not the right of title to the premises, by the construction of the act under which both parties claimed a title, and by which it had said either could only claim. ‘ The result was, the jury, having been so instructed, found a verdict for the plaintiff upon the question of fraud, without any instruction in any part of its charge that he claimed a title from an alcalde’s grant, which was within the act of March 26, 1851, or that the defendant was without one, unless it be the court’s intimation to the jury that the defendant might be considered as having no title under the act, if they should find that there had been fraud in the issue of his al-calde grant, or in the confirmation of it. The court’s construction of the rights of the parties under the act should have been independent of the question of fraud. The evidence which it allowed to be given of it was inadmissible, and the finding of the jury is of qo weight in the case. Fraud, as it is sometimes said, “vitiates every act” — correctly, too, when properly applied to the subject-matter in controversy, and to the parties in it, and in a proper forum. For instance, as when one of. them charges the other with an actual fraud; or when one of them, by his omission to do an act in time, which he ought to have done, as in not having recorded a deed, the ■other, without any knowledge of its existence, becomes in good faith a purchaser of the same properly; in such a case a claim,
 
 *332
 
 under the unregistered deed, is said to be fraudulent and void against a subsequent
 
 bona fide
 
 purchaser without notice. But in that case, the latter gains a legal preference by the court’s construction of the registry act, under which the first deed ought to have been recorded, and, as a matter of law, so in-sti’ucts the jury. But these cases are not applicable to the case in hand. Those are cases where the actual or constructive fraud grows out of the conduct of parties directly to each other, or is consequential from such conduct.
 

 This case involves directly the point whether, when a grant or patent for land, or legislative confirmation of titles to land, has been given by the sovereignty or legislative authority only having the right to make it, without any provision having been made in the patent or by the law to inquire into its fairness as between the grantor and grantee, or between third parties, a third party cannot raise in ejectment the question of fraud as between the grantor and grantee, and thus look beyond the patent or grant.
 

 We
 
 are not aware that such a proceeding is permitted in any of the courts of law. In England, a bill in equity lies to set aside letters patent obtained from the King by fraud, (Att. Gen.
 
 v.
 
 Vernon, 277, 370; the same case, 2 Ch. Rep., 353,) and it would in the United States; but it is a question exclusively between the sovereignty making the grant and the grantee. But in neither could a patent be collaterally avoided at law for fraud. This court has never declared it could be done. Stoddard and Chambers (2 How., 284) does not do so, as has been supposed. In that case, an act of Congress confirming titles,
 
 excepted
 
 cases where the land had previously been located by any other person than the confirmee, under any law of the United States, or had been surveyed and sold by the United States; and this court held that a location made on land reserved from sale by an'act of Congress, or a patent obtained for land so reserved, was not withm the exception, and the title of the confirmee was made perfect by the act of' confirmation, and without any patent, as against the prior patent, which was simply void; and this valid legal title enured at once to the benefit of an assignee of the confirmee. In this connection it must be remembered that we are speaking of patents for land, and not of transactions between individuals, in which it has been incidentally said, by this court, that deedo fraudulently obtained may be collaterally avoided at law. (Gregg
 
 v.
 
 Sayre, 8 Peters, 244; Swayzer
 
 v.
 
 Burke, 12 Peters, 11.)
 

 But we are also ,of the opinion that the act of March 26, 1851, to provide for the disposition of certain property of the
 
 *333
 
 State of California, (Cal. Laws, 764,) makes a direct'grant of all lands of tlie kind, and within the limits mentioned in the act, which hadbeen sold or granted by any alcalde of the city of San Erancisco, and confirmed hy the ayuntamiento, or town or city council thereof, and also
 
 registered or recorded in some book of record which was at the date of the act in the office or custody-or control of the recorder of the county of San Francisco, on or before the third day of April, one thousand eight hundred and fifty.
 
 The words of the statute are, “that all the lands mentioned in the first section of it are hereby granted and confirmed to the purchaser or purchasers, or grantees aforesaid, hy the State relinquishing the use and occupation of the same, and her interests therein, to the said purchasers or grantees, and each of them, their heirs and assigns, or any person or persons holding under them, for the term of ninety-nine years from and after the passage Of the act.” This language cannot be misinterpreted. The intention of the Legislature is without doubt, and we cannot make it otherwise by supposing any .condition than those expressed in the act; and we-also think that the registry of an alcalde’s grant, in the manner and within the time mentioned in the act, is essential to its confirmation under the act. In this particular, the Kearney grant, under which the plaintiff claimed, was deficient,, and so the court should have instructed the jury upon the prayer of the defendant, without the qualification that the entry made of it in the district records was a registry within the meaning of the act. "We do not deem it necessary to say more in this case, than that, in our view, the defendants have brought themselves, by their documentary evidence, completely within the confirming act of the 26th March, 1850, and that the court should have so instructed the jury, as it was asked to do by their counsel.
 

 The judgment of the court below is reversed.