## UNITED STATES *v.* CHILDERS.

*(District Court, D. Oregon.* June 27, 1882.)

GRANT TO THE NORTHERN PACIFIC RAILROAD COMPANY.

> By the act of July 2, 1864, (13 St. 365) the odd-numbered sections along the line of the Northern Pacific Railroad Company, for 40 miles on either side of the line in the territories and 20 miles in the states, is set apart and devoted to construction of the road of said corporation; but said act is not a present grant of said lands to said corporation, but only in effect an agreement or provision that the same shall be conveyed to it absolutely when and as fast as any 25 miles of said road is constructed and accepted by the United States; and in the mean time the legal title to the unearned and unpatented sections is in the United States, who may, therefore, maintain legal proceedings against any one that unlawfully cuts timber thereon.

Information for Cutting Timber on Public Lands.

*J. F. Watson,* for plaintiff.

DEADY, D. J. The defendant is accused by the information herein of the crime of cutting timber on the public lands of the United States, within the jurisdiction of this court, with the intent to dispose of the same, contrary to the statute of the United States. The defendant pleads "not guilty," and submits the case to the court for judgment upon the following statement of facts, which it is agreed between himself and the district attorney shall stand and be considered as the special verdict of a jury, duly found and given in the case, upon a trial of the issue made by said plea, to-wit:

> "That the defendant, in the year 1880, went upon the north-east ¼ of section 1, of township 2 north, range 8 east, of the Wallamet meridian, situate on the south bank of the Columbia river, near Shell Rock, about 12 miles above the Cascades, in the county of Wasco, and state of Oregon, under a contract with the Northern Pacific Railroad Company to purchase the same of it in five years thereafter, with a permit therein to cut timber thereon for the improvement of the premises; that the defendant built a house thereon and constructed a flume upon which to float wood to the river, and afterwards sold his improvements upon the premises to a third person for $1,000, and abandoned them; that during his occupancy of the premises he cut about 600 trees from about 10 acres of the same, from which he made about 1,200 cords of firewood, that he boated to the Dalles, a distance of about 28 miles, and sold it for $4,800; that said timber was worth while uncut about 50 cents a tree, or 25 cents a cord; and that the premises are within the limits of the grant to the Northern Pacific Railroad Company, as provided in sections 3 and 4 of the act of July 2, 1864, (13 St. 365,) granting lands to aid in the construction of said railway, but being as yet 'unearned' and unpatented because 'not opposite to and coterminous with' any 'complete section' or portion of the road of said corporation."

By section 3 of said act of July 2, 1864, it is provided "that there be and hereby is granted to the Northern Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction" of its road and telegraph line to the Pacific coast, the odd-numbered sections of the public lands of the United Stated for 40 miles on each side of the line of said road, through the territories, and 20 miles through the states, not otherwise appropriated "at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land-office;" and by section 4 it is further provided "that whenever said Northern Pacific Railroad Company shall have 25 consecutive miles of any portion of said railroad and telegraph line ready for the service contemplated" by the act, and that fact shall be made to appear to the president by report of commissioners, as therein provided, "patents of lands aforesaid shall be issued to said company confirming to the said company the *right* and *title* to said lands situate opposite to and coterminous with said completed section of said road; and from time to time, whenever 25 additional consecutive miles shall have been constructed, completed, and in readiness, as aforesaid, and verified by said commissioners to the president of of the United States, then patents shall be issued to said company *conveying* the additional sections of land, as aforesaid, and so on as fast as every 25 miles of said road is completed, as aforesaid:" provided, that only 10 sections of land per mile "shall be *conveyed* to said company" on the line of the road east of the western boundary of Minnesota until the whole of said road east of said boundary is finished.

Section 6 of the act provides that the president shall cause the lands to be surveyed for 40 miles in width on both sides of said road, "after the general route shall be fixed, and as fast as may be required by the construction of said railroad; and the odd sections of land hereby granted shall not be liable to sale or entry or pre-emption before or after they are surveyed, except by said company, as provided in this act."

Upon this state of law and fact, the question is, did the act of July 2, 1864, *supra*, vest in or pass the title to the odd sections along the line of the road to the Northern Pacific Railroad Company as soon as said line was definitely fixed, and the plat thereof filed in the general land-office, or does it remain in the United States until it is earned by the company by the construction of the road opposite thereto and the issue of the patent therefor?

The case of *Schulenberg* v. *Harriman*, 21 Wall. 44, is a leading

case on this subject.  There the act under consideration—June 3, 1856, 11 Stat. 20—was held to be a present grant to the state of Wisconsin, and that the legal title thereby passed to the state.  But besides the words of grant similar to those in section 3 of the Northern Pacific Railroad act, "that there be and is hereby granted," the Wisconsin act also provided that the lands embraced therein should "be subject to the *disposal* of the legislature," and that in case the road they were given to aid in the construction of was not built in 10 years, the lands remaining unsold should *revert* to the United States; and no provision was made in the act for issuing patents to the lands, nor did it contain any clause which purported to or could be construed to restrain or limit the operation of the words of present grant.

The court held that the legal title to the lands passed to the state, and therefore it was the owner of logs cut thereon, and was entitled to the benefit of the usual remedies for their removal or conversion.

The doctrine of the case is succinctly stated by Mr. Justice Field, in his opinion, as follows:

" They [the authorities] establish the conclusion that unless there are other clauses in a statute restraining the operation of words of present grant, these must be taken in their natural sense to import an immediate transfer of title, although subsequent proceedings may be required to give precision to that title and attach it to specific tracts."

But in my judgment the clauses in section 4 of the act under consideration, concerning the *conveyance* of the lands granted to the corporation as each section of 25 miles of the road is constructed and accepted by the grantor, does restrain the operation of the words of present grant in section 3, so that it appears manifest that while it was the intention of congress to set apart and devote the lands in question absolutely to the construction of the Northern Pacific Railroad, yet it did not intend to part with the title to them until and only so fast as they were *earned* by the completion of the work.

This view of the question is further confirmed by the provisions contained in sections 8 and 9 of the act, the plain purport and effect of which is that if the company does not proceed with the work and complete the road as rapidly as therein provided, the United States may take the construction of the road into its own hands, and to that end may dispose of or appropriate the unearned and unpatented land in any way "needful and necessary to insure a speedy completion of the road."

Such a power is compatible and consonant with the idea that the lands were devoted by congress to the construction of the road, while

the legal title and control of them should remain in the United States until the lands were earned by the company in the construction of the same, but incompatible with the idea of an absolute grant to the corporation *in præsenti* that would entitle it to dispose of, encumber, or squander the lands in advance of the construction of the road, and thereby prevent the United States from completing it by this means in the contingency contemplated.

In *Rice* v. *Ry. Co.* 1 Black, 358, it was held that an act giving lands to the territory of Minnesota to aid in the construction of a railway therein, by words of present grant, "there is hereby granted," did not pass the title to the territory, taken in connection with another provision in the act to the effect that no title should vest in the territory until 20 miles of the road were completed and accepted by the secretary of the interior, when a patent should issue for so much of the grant, and so on, as often as any 20 miles of the road were so completed and accepted. This ruling was approved in *Schulenberg* v. *Harriman, supra,* 62.

And although there is no express declaration in the North Pacific act that the title shall vest in the corporation until the completion of the road, or portions of it, yet the legal effect of the clauses therein, which provide for conveying and confirming the title to the company by patent only upon the completion of the road, or portions of it, is the same.

My conclusion, then, is that the legal title to the unearned portions of this grant—the odd-numbered sections opposite to which the road has not been completed and accepted—is still in the United States.

Subsequent to the grant and the adoption of the line of the road, and prior to its construction, the relation between the United States and the corporation is analagous to that of vendor and vendee—the latter being in possession under a contract to purchase and receive a conveyance upon the payment of the purchase money or the performance of the act constituting the consideration for the sale.

The premises upon which the defendant cut the timber in question being a part of these unearned lands, he is guilty of violating section 4 of the act of June 3, 1878, (20 St. 90,) which enacts that any person who shall unlawfully cut any timber growing on any land of the United States, in Oregon, with intent to export or dispose of the same, shall be guilty of a misdemeanor, and on conviction thereof fined not less than $100 or more than $1,000.

See *The Timber Cases,* 11 FED. REP. 81; *U. S.* v. *Smith,* Id. 487.