UNITED STATES *v.* ORDWAY and others.

*(Circuit Court, D. Oregon. March 7, 1887.)*

1. PUBLIC LANDS—CUTTING TIMBER—ACTION FOR DAMAGES—PARTIAL DEFENSE.
    A partial defense to an action or in mitigation of the damages claimed therein ought to be pleaded in the answer as a distinct defense; and an allegation that the defendants cut and removed certain timber from alleged public land, believing that it was the land of the Northern Pacific Railroad Company, from which they had a license, is such a defense, where the damages claimed in the complaint are based, not only on the value of the timber in the standing tree, but also the value bestowed on the same in converting it into lumber. and putting it into market.

2. SAME—GRANT TO THE NORTHERN PACIFIC RAILROAD COMPANY.
    The grant of certain odd sections of the public lands to the Northern Pacific Railway Company, by the act of July 2, 1864, (13 St. 365,) does not give the corporation any such present right to or interest in any one of such sections as authorizes it to waste the same, by disposing of the timber thereon before it is earned by the construction of the section of the road adjacent and opposite thereto. The case of *U. S.* v. *Childers,* 8 Sawy. 171, 12 Fed. Rep. 586, distinguished from *Butts* v. *Northern Pac. Ry. Co.,* 7 Sup. Ct. Rep. 100, and followed.

3. SAME—EARNED LANDS.
    On the construction and acceptance of any section of the road of the Northern Pacific Railway Company, the coterminous odd sections vest absolutely in the corporation, and thereafter the patent therefor may be considered as having issued.

*(Syllabus by the Court.)*

Action to recover damages for cutting timber on the public lands.

*Lewis L. McArthur*, for the United States.

*Rufus Mallory*, for defendants.

DEADY, J. This action is brought by the United States to recover damages for cutting and removing timber from the public lands, and converting the same to the use of the defendants. Substantially, it is alleged in the complaint that on March 1, 1883, and on divers other days between then and the commencement of this action, the defendants unlawfully entered on the S. W. ¼ of section 11, in township 2 N., of range 5 E. of the Wallamet meridian, the same being public land of the United States, situate in the territory of Washington, and did unlawfully cut and remove therefrom 6,000,000 feet of timber, and manufactured the

same into saw-logs of the value of $6,000; that the defendants removed said logs to a mill operated by them at Portland, Oregon, well knowing that the same were the property of the plaintiff, and did there manufacture the same into lumber, of the value of $72,000, and converted the same to their own use, to the damage of the plaintiff $72,000.

In their answers the defendants deny *seriatim* the allegations of the complaint. But the answer of Julius Ordway and George W. Weidler also contains a special defense, to the effect following: That said section 11 is within the grant made by congress to the Northern Pacific Railway Company, in the act of July 2, 1864, and accepted by the same; that said company afterwards filed with the secretary of the interior a map of the general route of its road from Portland, on the north side of the Columbia, to Wallula junction, and thereafter, on August 31, 1870, the lands included in said grant were withdrawn from pre-emption and sale, except by said company; that said section 11 is less than 10 miles from the line of the general route of said road, and on said August 31, 1870, was public land of the United States, not reserved, sold, granted, or appropriated otherwise than by said act of 1864, and thenceforth and thereafter became and was the property of said company; that prior to March 1, 1883, the defendants, with the license and consent of the Northern Pacific Railway Company, and under an agreement therewith for the purchase thereof, entered on said quarter section, and caused to be cut and removed therefrom about 2,806,488 feet of saw-logs, of which not more than two-thirds would produce merchantable lumber; and such two-thirds was not worth, in the standing tree, more than 10 cents per thousand feet. The defendants also allege in the same defense that they caused said lumber to be cut and removed from said quarter section in good faith, believing that the same was the property of the Northern Pacific Railway Company, and not that of the United States.

The plaintiff demurs to this defense, because the facts stated therein do not constitute a defense to the "cause of action" stated in the complaint, or "any part thereof." The allegation concerning the good faith of the defendants is a partial but distinct defense from that of title in the company and license therefrom, and should have been separately stated. But, as no motion was made to strike out the answer on this ground, (Code Civil Proc. Or. § 81,) the objection is waived.

In *Wooden-ware Co.* v. *U. S.*, 106 U. S. 432, 1 Sup. Ct. Rep. 398, the supreme court decided that, in an action for damages for timber cut and carried away from the plaintiff's land, the measure thereof, in case the trespass is willful, is the value of the timber at any time before suit is brought, with no deduction for any labor or expense bestowed thereon by the trespasser; but where the trespass is inadvertent or unintentional, the measure of damages is the value of the timber at the time of conversion, less the value of such labor or expense.

The complaint in this case charges the defendants as willful trespassers, and claims damages of them accordingly; that is, for the value of the timber after it had been removed to Portland, and manufactured into lumber. Admitting that the land on which the timber was cut is the

property of the United States, this defense of good faith goes to the claim for damages beyond the value of the timber in the tree, and consists in the allegation that the defendants cut and carried away the timber, supposing that the land on which it grew belonged to the Northern Pacific Railway Company, under whose license they were acting, wherefore they are not willful trespassers, nor liable for the enhanced value of the property. There has been some conflict of opinion in the courts as to whether a partial defense, as a matter in mitigation of damages, ought to be pleaded in the answer, or given in evidence under the denials. *Gilbert* v. *Rounds,* 14 How Pr. 46; *Saltus* v. *Kipp,* 12 How. Pr. 342; *Lane* v. *Gilbert,* 9 How. Pr. 150; *Kneedler* v. *Sternberg,* 10 How. Pr. 67; *Bush* v. *Prosser,* 11 N. Y. 347; *McKyring* v. *Bull,* 16 N. Y. 297; *Foland* v. *Johnson,* 16 Abb. Pr. 235. The last three of these cases require the matter to be pleaded.

In my judgment, the matter may and ought to be pleaded. The provision in the Code of Civil Procedure (section 71) which confines the answer to denials, and new matter constituting a defense or counter-claim to the action, ought to be so construed as to admit such matter, where it is only an answer to a part of the cause of action,—as a part payment. The word "defense" is a term of art. It comes from the Norman French, and was used in common-law pleading in the sense merely of denial. Rap. & L. Law Dict. "Defense;" 1 Chitty, Pl. 462. Any new matter, then, which confesses and avoids the plaintiff's cause of action, either in whole or in part, and so far denies it, ought to be pleaded as a defense. *Bush* v. *Prosser,* 11 N. Y. 347; *McKyring* v. *Bull,* 16 N. Y. 297; Bliss, Pl. § 327. The spirit and purpose of the Code is that the parties shall state in the pleading the facts of the case,—not the evidence of them,—so that the controversy shall be narrowed to the real matter in dispute, and the issue shall involve nothing but what is directly affirmed on the one side, and denied on the other, and concerning which the parties may therefore be prepared to furnish proof on the trial.

The demurrer to this defense is based on the proposition that neither good faith nor honesty of purpose is a defense to this action; citing 6 Wait, Act. & Def. 129. It is admitted that such faith or purpose is not a defense to the simple trespass,—the breaking of the plaintiff's close,—or the taking and converting to the defendant's use the plaintiff's timber growing therein. But they ought to be and are a defense to the claim made by the plaintiff to recover as damages for such trespass and conversion, not only the value of the timber standing in the tree, but the enhanced value put on it, at the expense of the defendants, in removing it to Portland, and there making it into lumber. This defense covers at least twenty-three twenty-fourths of the damages claimed in this case, and, if established on the trial, will be a bar to the recovery thereof. The demurrer to it is overruled.

In support of the demurrer to the defense of title in the railway company, and a license therefrom, counsel contends that the cession to the Northern Pacific, by the act of July 2, 1864, (13 St. 365,) is not a present grant, but only a legislative compact that, on the construction of the

road, the title to the lands granted for that purpose shall vest in the company; and that, under the most favorable construction of the act, the title to the lands granted only vested in the company as fast and far as the road was constructed. Counsel also objects that it does not appear from the defense that the company has yet filed a definite line of route between here and Wallula junction, as provided in section 3 of the act. It does appear that the line of the general route has been filed with the secretary, and my impression is that, until it is changed, it is the definite one, or has the same effect. No particular time is prescribed in which either shall be done. The filing of the general line of route has the effect, under section 6, to reserve the odd sections, for the purposes of the act, within 40 miles on either side thereof, and to prohibit their "sale or entry or pre-emption," except by the company; and the pre-emption and homestead laws are thereby in effect specially extended over the even sections within said limits. The omission to file a more definite or other line of the route of the road does not appear to be material in this case; for, whatever right the company could acquire in this land under the act, before the construction of the coterminous section of the road, was acquired from the filing of the line of the general route.

On the argument of the demurrer, it was assumed that the court will take notice that no portion of the Northern Pacific road has been constructed between Portland and Wallula junction, and therefore that said section 11 is not coterminous with any constructed section thereof.

In *U. S. v Childers,* 8 Sawy. 171, 12 Fed. Rep. 586, I held, in the language of the syllabus, that, "by the act of July 2, 1864, the odd-numbered sections along the line of the road of the Northern Pacific Railway Company, for forty miles on either side of the line in the territories, and twenty miles in the states, are set apart and devoted to the construction of the road of said corporation; but said act is not a present grant of said lands to said corporation, but only in effect an agreement or provision that the same shall be conveyed to it absolutely when and as fast as any twenty-five miles of said road is constructed and accepted by the United States; and, in the mean time, the legal title to the unearned and unpatented sections is in the United States." In the course of the opinion in that case, it was substantially said that the provision in section 4 of the act, for the conveyance of the lands to the corporation, as fast as each section of 25 miles of the road was constructed, restrains the operation of the words of the present grant in section 3, so that, while it is manifest that congress intended to devote the lands in question to the construction of the road, yet it did not intend to part with the legal title to them only as they were "earned" by such construction. It was also said that this view is confirmed by the provisions in sections 8 and 9 of the act, to the effect that, if the corporation does not proceed with the work as therein provided, the United States may take the construction of the work into its own hands, and to that end may dispose of the unearned lands in any way "needful and necessary to insure a speedy completion of the road;" and that such a reservation of power is consistent with the idea that the lands are devoted to the construction of the road, while the legal

title remains in the United States, until they are earned, but altogether inconsistent with the idea of a present grant to the corporation, whereby it might dispose of, incumber, or waste the lands in advance of the construction of the road.

On this view of the act, the demurrer to this defense is well taken. The land from which the timber was taken being unearned, the corporation had no such right to or interest in it as would enable it to dispose of the timber thereon, and authorize the severance and removal of the same therefrom. That was a wasting of the land, and so far a destruction of its value. In this respect, it is a very different thing from pledging the land for aid in construction of the road, subject, of course, to all the conditions of the act, and the contingency of the corporation's compliance therewith.

The case of *Buttz* v. *Northern Pac. Ry. Co.*, 7 Sup. Ct. Rep. 100, lately decided by the supreme court, is relied on by the defendants as authority for the proposition that the act of July 2, 1864, is an unqualified present grant of the odd sections included therein, whether earned or unearned. There is language, in the opinion of the court, which, abstracted from its surroundings, may be so construed. But I am not prepared to admit, however, that the case goes so far. The controversy was for the possession of a tract of land within the limits of the grant to the corporation, and coterminous with a constructed section of its road. Peronto, Buttz's testate, claimed the land under the pre-emption act, alleging a settlement thereon on October 5, 1871, and the corporation claimed it under the act of July 2, 1864, and brought suit to recover the possession of the same. At the date of the act, the land was in the occupation of Indian tribes, whose title was extinguished by an agreement with the secretary of the interior on June 19, 1873, which act was approved by congress on June 22, 1874. In the fall of 1871, the corporation commenced the construction of its road coterminous with the land in question, and in June, 1872, the same was completed. On February 21, 1872, the corporation filed in the proper office a map of the general route of its road in this locality, and on May 26, 1873, filed a map of the definite location of the same. On August 11, 1873, and within three months from the filing of the plat of the survey of the township in the local land-office, Peronto presented to the register and receiver his declaratory statement as a pre-emptor for this land, which they refused to receive, because the land belonged to the corporation; and on appeal to the commissioner, and thence to the secretary of the interior, their action was approved. The court held that the grant to the corporation included the lands then occupied by the Indians, subject to such occupation, until terminated by congress; that Peronto had no valid claim to the land in controversy, and that the same belonged to the corporation on two grounds: (1) That the Indian title to the land was not extinguished when Peronto commenced his settlement; and before he made his declaratory statement, August 11, 1873, the corporation had filed the definite location of its route, May 26, 1873, whereupon its right immediately attached to the premises. (2) On the filing of the map of the line of

general route of the road, February 21, 1872, by operation of section 6 of the act of 1864, the odd sections for 40 miles on either side of said line were then withdrawn from sale or pre-emption, and reserved for the construction of the road. In short, the occupation of Peronto, prior to the filing of these maps of either general or definite location of the route of the road, could avail him nothing, as the land was not open to pre-emption, because the Indian title was not then extinguished; and, on the filing of the first map, the land was specially withdrawn from sale or pre-emption, irrespective of the Indian title, and, on the filing of the second one, the right of the corporation at once attached thereto. I have thus been at some pains to state fully the circumstances and grounds of this decision, and I do not perceive any conflict between it and the decision in *U. S.* v. *Childers,* in which it was held (175) that the legal title to the unearned portions of the grant was still in the United States.

Two points are clearly decided in *Buttz* v. *Northern Pacific:* 1) From the filing of the map of general route, the odd sections within the limits of the grant are withdrawn from sale or pre-emption; and (2) the grant of the corporation, so far and fast as the lands are earned by the construction of the road, becomes absolute and unqualified. And it may also be well implied from the decision that, when the right to any odd section within the limits of the grant has finally vested in the corporation, by reason of the construction and acceptance of any portion of the road, the same will relate back to the time of filing the map of general route,—the initiative step in the process of complying with the act; and the patent to which the corporation is then entitled may, for all practical purposes, be deemed to have issued. At least in my judgment, such is the law. But whatever might be inferred from some general expressions in the opinion of the court, I do not think that the case decides that the corporation has any such right to or interest in the unearned lands as authorizes it to waste the same by disposing of the timber thereon.

In the consideration of this question, no weight has been given to the fact that the time within which the corporation was required to complete the road had elapsed before the license to cut and remove this timber was given to the defendants, or that it is so generally understood as to be taken for granted that the Northern Pacific does not intend to construct the road between Portland and Wallula junction. For any default or delay in complying with the conditions of the grant, congress has reserved to itself (sections 8, 9, Act 1864) the power to act, and, until it does, the courts cannot take cognizance of the same. The grant on this division of the route ought long since to have been resumed, and in some way applied to the construction of the road, or restored to the public domain. And, in all probability, this latter disposition would have been made of the matter ere this, but for the irrational conduct of certain persons in congress, who stubbornly insist that no part of the grant west of the Missouri river shall be forfeited, unless the bill includes the earned as well as the unearned lands.

On the whole, my conclusion is that the demurrer to this defense is well taken, and that it must be sustained.