NORTHERN PAC. R. CO. *v.* CANNON *et al.*

*(Circuit Court, D. Montana. April 6, 1891.)*

1. PUBLIC LANDS—RAILROAD GRANT—LEGAL TITLE.
    The grant of public lands to the Northern Pacific Railroad Company in aid of its railroad by Act Cong. July 2, 1864, vested the company with the legal title to such lands when the grant took effect, upon the designation of the route of the road, irrespective of the fact that no patents had been issued therefor.

2. SAME—INVALID PATENT—EQUITABLE RELIEF.
    Having the legal title, and being out of possession, the company can maintain ejectment against persons holding under an invalid patent issued pursuant to an entry of the land as a mining claim, though in fact it was valuable only for agricultural purposes; but a bill by it to determine such adverse title is demurrable as failing to show grounds for equitable relief.

In Equity.   On demurrer to bill.
*Cullen, Sanders & Shelton* and *F. M. Dudley*, for plaintiff.
*M. Bullard* and *Toole & Wallace*, for defendants.

KNOWLES, J.   The plaintiff sets forth in its bill of complaint filed herein that it received a grant from the United States by virtue of an act dated July 2, 1864, on the line of its railroad to certain lands.   There is set forth therein all the acts required of plaintiff in order to designate and vest in plaintiff the title to the lands granted by said act; that the land hereinafter named was, at the date of said grant, and at the date it fixed the general route of its railroad, public land belonging to the United States, free from any claims or rights whatever, and agricultural land; that the land herein described was within the limits of plaintiff's grant, upon an odd section, to-wit, the S. ½ of the S. E. ¼, and the S. E. ¼ of the S. W. ¼, of section 29, in township 10 N., range 3 W., of the principal meridian of Montana; that about the 9th day of February, 1880, the said Catherine B. Cannon made application to patent said premises as mineral lands, and, with the view of defrauding plaintiff, the said defendants C. W. Cannon and Catherine B. Cannon falsely and fraudulently represented to the officers of the United States land-office that the same was mineral land, and introduced false testimony and affidavits to support said application in said office; that on or about the 18th day of October, 1881, the said United States land-office issued to the said Catherine B. Cannon a patent from the United States to said premises as mineral land; that the said patent is a cloud upon plaintiff's title, and prevents it from receiving a patent to said premises to which it is entitled.   The principal prayer in said bill is:

"And your orator prays that your honors may decree that the said defendants have no estate or interest whatever in or to said lands or premises, and that the title of your orator is good and valid, and that the said defendants, and each of them, be forever enjoined and restrained from asserting any claim whatsoever in and to said lands and premises adverse to your orator, and for such other and further relief as the equity of the case may require, and to your honors may seem meet."

The only allegation as to the possession of said premises is as follows:

"And your orator further shows on its information and belief that such premises have been vacant, unoccupied, unfenced, and unimproved, and not used for any purposes, until within less than five years prior to the commencement of this action."

To this bill of complaint all the defendants but Mrs. Walker demur. The first ground of demurrer is "that it appears by the plaintiff's own showing in the said bill that the said plaintiff is not entitled to the relief prayed by the bill against these defendants."   There are many other grounds stated in the demurrer, but the only one which will be noticed is as to whether the bill states facts sufficient to show that the case is within the equity jurisdiction of this court, and in considering this the first question presented is, what is the nature of the title of the Northern Pacific Railroad Company to the lands embraced within its grant?   Is

it a legal or an equitable one?   It fully appears that it has no patent for the lands specified in this bill.   In considering this question I am much perplexed, for it appears to me there are two lines of decisions upon this point, one of which holds that its title is a legal one, the other that it is an equitable one.   The grant of lands to the Union Pacific Railroad Company is similar to that to the Northern Pacific Railroad Company.   It has been held by decisions of the supreme court that as to the granting of lands they are in substance the same.   In the case of *Railway Co.* v. *Prescott*, 16 Wall. 608, the supreme court says:

"As the government retains the legal title until the company, or some one interested in the same grant or title, shall pay these expenses, the state cannot levy taxes on the land, and, under such levy, sell and make titles which might in any event defeat this right of the federal government, reserved in the act by which the inchoate grant was made."

In the case of *Railway Co.* v. *McShane*, 22 Wall. 444, the same court uses this language:

"That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the government can admit of no doubt.  Until this is done, the equitable title of the company is incomplete. There remains a payment to be made to perfect it."

Again—

"The United States retains the legal title by withholding the patent, for the purpose of securing the payment of these expenses, and it cannot be permitted to the states to defeat or embarrass this right by a sale of the land for taxes."

In the case of *Railroad Co.* v. *Traill Co.*, 115 U. S. 600, 6 Sup. Ct. Rep. 201, the same court again considers this same question in connection with the grant now under consideration, and held:

"The United States made a magnificent grant to this company of lands equal to forty or fifty thousand square miles, an area as large as an average state of the Union.  It thought proper to require of the grantee the payment of the costs of making the surveys necessary to the location and ascertainment of these lands.  To secure the payment of these expenses, it decided to retain the legal title in its own hands until they were paid.  The government was as to these costs in the condition of a trustee in a conveyance to secure payment of money; but, if the land was liable to be sold for taxes due to state, territorial, or county organizations, this security would be easily lost."

In this case the supreme court held that the statute passed in 1870 upon the subject of the Northern Pacific Railroad Company's paying for the costs of surveying the lands within its grant placed it in the same condition as the Union Pacific Railroad Company and the Kansas Pacific Railroad Company, so far as its land grant was concerned.   This statute of 1870 is as follows:

"That before any land granted to said company by the United States shall be conveyed to any party entitled thereto under any of the acts incorporating or relating to said company, there shall first be paid into the treasury of the United States the cost of surveying, selecting, and conveying the same by the said company or party in interest."  16 U. S. St. at Large, 305.

This statute the supreme court holds is in substance the same as section 21 of the act of 1864, concerning the grant of lands to the Union Pacific Company, which reads as follows:

"That before any lands granted by this act shall be conveyed to any company or party entitled thereto  *  *  *  there shall first be paid into the treasury of the United States the cost of surveying, selecting, and conveying the same by the said company or party in interest, as the titles shall be required by said company."    13 U. S. St. 365.

In effect it would appear that these two statutes are the same; and the three decisions construing the grants to the Kansas Pacific, Union Pacific, and Northern Pacific Railroad Companies arrive at the same conclusion: That the title in these companies to their lands is an equitable one; that, until these costs of surveying and conveying the same are paid, the railroad companies have not a complete equitable title even to their land.    *Railroad Co.* v. *Traill Co.*, *supra*.    If I understand correctly the purport of the decisions in the case of *Railroad Co.* v. *U. S.*, 124 U. S. 124, 8 Sup. Ct. Rep. 417, the same doctrine is maintained.

I come now to consider the other line of decisions which appear to me to maintain the view that the legal title to the land granted to these several railroad companies is in them.    In the case of *Schulenberg* v. *Harriman*, 21 Wall. 44, the supreme court held that the words in the act granting land to the state of Wisconsin for railroad purposes, "that there be, and is hereby, granted," imply the present granting of the title in fee. Sustaining this view are: *Railroad Co.* v. *U. S.*, 92 U. S. 741; *Missouri, etc., Ry. Co.* v. *Kansas Pac. Ry. Co.*, 97 U. S. 491; and *Wood* v. *Railroad Co.*, 104 U. S. 329.    In the case of *Buttz* v. *Railroad Co.*, 119 U. S. 66, 7 Sup. Ct. Rep. 100, the supreme court, upon this subject, uses this language:

"At the time the act of July 2, 1864, was passed the title of the Indian tribes was not extinguished.    But that fact did not prevent the grant of congress from operating to pass the fee of the land to the company.    The fee was in the United States.    The Indians had merely a right of occupancy,—a right to use the land subject to the dominion and control of the government.    The grant conveyed the fee, subject to this right of occupancy."

In *Denny* v. *Dodson*, 13 Sawy. 66–75, 32 Fed. Rep. 899, Justice Field, sitting as circuit justice, after referring to some of the decisions cited as to the grant being one *in præsenti*, said:

"The present title here mentioned is a legal title, as distinguished from an equitable or inchoate interest arising upon a contract or promise of the government.    The words 'there be, and is hereby, granted' are not words of contract or promise, but, as said in the citations, are words of absolute donation; that is, they transfer a present legal right to the sections designated, which become attached to them specifically whenever they are identified."

In this case that eminent jurist stated that he did not think the supreme court in the case of *Railroad Co.* v. *Traill Co.*, *supra*, "intended to hold that a legal title to the land had not passed by the grant to the company."    In regard to the effect of the patent in that case this language was used:

"Why, it is asked, is there a necessity of such patents, if the title passed by the act itself? There are many reasons why patents should be issued upon the completion of portions of the road. They would identify the lands which are coterminous with the road completed. They would be evidence that the grantee, in the construction of that portion of the road, had fully complied with the conditions of the grant, and to that extent the grant was relieved of possibility of forfeiture for breach of its conditions; and they would obviate the necessity of any other evidence of the grantee's title to the lands embraced in them. They would thus be deeds of further assurance, confirmatory of the grantee's title, and so be invaluable to them as a source of quiet and peace in their possession."

In the case of *Railroad Co.* v. *Price Co.*, 133 U. S. 509, 10 Sup. Ct. Rep. 341, the supreme court says:

"The title conferred by the grant was necessarily an imperfect one, because, until the lands were identified by the definite location of the road, it could not be known what specific lands would be embraced in the sections named. The grant was, therefore, until such location, afloat. But when the route of the road was definitely fixed the sections granted became susceptible of identification, and the title attached to them, and took effect as of the date of the grant so as to cut off all intervening claims."

Again:

"The subsequent issue of the patents by the United States was not essential to the right of the company to those parcels, although in many respects they would have been of great service to it. They would have served to identify the land as coterminous with the road completed. They would have been evidence that the grantee had complied with the conditions of the grant, and to that extent that the grant was relieved of possibility of forfeiture for breach of them. They would have obviated the necessity of any other evidence of the grantee's right to the lands, and they would have been evidence that the lands were subject to the disposal of the railroad company with the consent of the government. They would have been, in these respects, deeds of further assurance of the patentee's title, and, therefore, a source of quiet and peace to it in its possessions."

This last clause, it will be observed, is almost identical with the one already quoted from *Denny* v. *Dodson.* The same distinguished judge wrote both opinions, hence it cannot be doubted what was meant by the language used in this last one. It is true it is stated in this opinion that it makes no difference as to that case whether the railroad company had a complete title in equity or a legal title; still the conclusion seems inevitable that the views expressed in *Denny* v. *Dodson* are adopted by that court, and that the views expressed in *Buttz* v. *Railroad Co.*, *supra*, are confirmed. In this case it is also stated that the land grants to the several railroads, made between 1860 and 1880, are similar in terms, and hence the interpretation of one applies to all. I hold that the latest expression of the supreme court is that the plaintiff in this case has the legal title, if any, to the premises in controversy. If this were a new question, I should be disposed to hold, as was held by Judge DEADY in *U. S.* v. *Childers*, 8 Sawy. 171, 12 Fed. Rep. 586, that the terms used in the grant, taken altogether, show that it was not the intention of congress to grant a present legal title to the lands granted to the Northern Pacific Railroad Company, but only a title which was to be perfected

when a patent should issue therefor, which patent would by relation take effect from the date of the grant. But the views of the supreme court must control this. It has been held that a grant of the legal title by an act of congress to land owned by the United States is entitled to greater weight than a patent title executed by a ministerial officer of the government. *Smythe* v. *Henry*, 41 Fed. Rep. 705; *Whitney* v. *Morrow*, 112 U. S. 693, 5 Sup. Ct. Rep. 333.

The next question for consideration is, should the plaintiff, having the legal title, have shown in its bill that it was in the possession of the premises in dispute? The bill does not so allege. It is set forth therein, "that to within a period of five years the premises were vacant, unoccupied, unfenced, and unimproved; and not used for any purpose." The inference is that the said premises were, at the commencement of this suit, occupied by some one, and it is not alleged that the plaintiff is that person. If possession in plaintiff was necessary in order to enable it to maintain this action, this should affirmatively appear in the bill. The above allegation was probably made with the view of showing that the statute of limitation had not run against this action. In the case of *Orton* v. *Smith*, 18 How. 263–265, the supreme court says:

"Those only who have a clear, legal, and equitable title to land, connected with possession, have any right to claim the interference of a court of equity to give them peace, or dissipate a cloud on the title."

To the same effect are *Hipp* v. *Babon*, 19 How. 271; *Ellis* v. *Davis*, 109 U. S. 485, 3 Sup. Ct. Rep. 327; *Killian* v. *Ebbinghaus*, 110 U. S. 568, 4 Sup. Ct. Rep. 232; *Fussell* v. *Gregg*, 113 U. S. 550, 5 Sup. Ct. Rep. 631; *U. S.* v. *Wilson*, 118 U. S. 86, 6 Sup. Ct. Rep. 991. The general rule is that those who have a legal title and are out of possession cannot maintain an action to remove a cloud upon their title. Possession must first be obtained in an action at law. Pom. Eq. Jur. §§ 1398, 1399, and note 4. If the statute law of the state gave the right to maintain an action where the plaintiff owns a legal title and is not in possession, the same right might be enforced in a federal court. Where a new equity is given by a state statute, that equity may be enforced in a court of the United States. There is, however, no statute in Montana which gives this right when the plaintiff is not in possession. The only statute upon this subject is as follows:

"An action may be brought by any person in possession by himself or his tenant of real property against any person who claims an estate or interest therein adverse to him for the purpose of determining such adverse claim, estate, or interest." Comp. St. p. 160, § 366.

This is the same statute as exists in California upon this subject, and was copied from the statutes of that state by the legislative authority in the territory of Montana. It had received an interpretation in that state before its adoption in Montana, and since that date. The courts of California have held that under this statute it must affirmatively appear that the plaintiff is in the actual possession of the premises from the title to which he seeks to remove a cloud. *Curtis* v. *Sutter*, 15 Cal. 260; *Rico* v. *Spence*, 21 Cal. 504; *Lyle* v. *Rollins*, 25 Cal. 437; *Ferris* v. *Irving*, 28

Cal. 645. Other cases might be referred to. Plaintiff has cited, as supporting a contrary view, the case of *Railroad Co.* v. *Wiggs*, 43 Fed. Rep. 333. The learned and distinguished jurist who rendered that opinion does not state therein whether he holds to the view that plaintiff has a legal or an equitable title to the lands specified in plaintiff's bill. He does say that the remedy of plaintiff in that case was not as adequate and complete at law as in equity, and he cites in support of this view *Van Wyck* v. *Knevals*, 106 U. S. 370, 1 Sup. Ct. Rep. 336, and *Pixley* v. *Huggins*, 15 Cal. 128. In the first of these the supreme court says, (see opinion, page 365, 106 U. S., and page 337, 1 Sup. Ct. Rep:) "The legal title under the grant goes to the state, but the equitable right vests in the company." It is evident that in this case the court was considering a cloud upon an equitable, not a legal, title. There are many cases which support the view that where the plaintiff has only an equitable title he has the right to maintain an action to remove a cloud upon the same, although not in possession, on the ground that he has no adequate remedy at law. In the last case it does not appear whether the plaintiff claimed under an equitable or a legal title. I do not think this case can be considered in opposition to numerous cases in the California supreme court that hold that in such cases, if plaintiff has a legal title in the premises, he must have possession. It should be remarked that at the time the opinion in the case of *Railroad Co.* v. *Wiggs*, *supra*, was rendered, the statute law in California had been so changed as to permit an action to remove a cloud upon a title to be maintained by one having a legal title, though not in possession; and this may interpret that decision. *People* v. *Center*, 66 Cal. 551, 555, 556, 5 Pac. Rep. 263, and 6 Pac. Rep. 481. There is a class of cases which seem to clash with the general rule that in cases to remove a cloud upon a title plaintiff must show possession of the premises claimed. These are cases where a party has purchased real estate at a sheriff's sale, and obtained a sheriff's deed therefor, and the judgment debtor has sold the same to a third party, with the view of defrauding his creditors. A bill is supported in these cases upon the ground that it partakes of the nature of a creditors' bill. *Sands* v. *Hildreth*, 14 Johns. 493; *Hager* v. *Shindler*, 29 Cal. 48; *Lick* v. *Ray*, 43 Cal. 83. There is another class of cases which at times appear to be confounded with these for determining the adverse title to lands. These are bills of complaint which have for their object the canceling and annulling of some deed or other instrument which affects the title to land which was obtained by fraud. In these cases the question of title to the land is not involved. Such is the class of cases referred to in Story, Eq. Jur. § 694; *U. S.* v. *Minor*, 114 U. S. 233, 5 Sup. Ct. Rep. 836. The bill of complaint shows that this case is one to determine the adverse title of defendants, and not an action to cancel the patent to the premises named, issued to the defendant Catherine B. Cannon. If it could be considered an action to cancel the patent to said defendant for fraud, I should have doubts of the ability of the plaintiff to maintain this action. The fraud, if any, was perpetrated upon the United States; and the United States and said defendants are

the parties to the conveyance. Plaintiff had received its title, if any, to the premises long prior to the issuing of this patent. In the case of *Field* v. *Seabury*, 19 How. 323, the supreme court says:

"In England a bill in equity lies to set aside letters patent obtained from the king by fraud, (*Attorney General* v. *Vernon*, 1 Vern. 277, 370, 2 Rep. Ch. 353;) and it would in the United States; but it is a question exclusively between the sovereignty making the grant and the grantee."

In this, it might be said, the fraud complained of, as well as the contract embraced in the patent, is a question exclusively between the United States and the defendant. See, also, *White* v. *Burnley*, 20 How. 235; and, also, *Jackson* v. *Lawton*, 10 Johns. 24; *Hughes* v. *U. S.*, 4 Wall. 232; *Silver* v. *Ladd*, 7 Wall. 219; *Rubber Co.* v. *Goodyear*, 9 Wall. 788; *Mowry* v. *Whitney*, 14 Wall. 434. It seems to be contended by plaintiff that the allegations of fraud in the bill would give the court jurisdiction to determine all the questions involved in this case. The contention seems to be that, where a suit has been brought to cancel an instrument obtained by fraud, a court of equity will take jurisdiction of all matters connected with the subject-matter concerning which the fraud was perpetrated, and settle the whole controversy between the parties claiming an interest in the same. But the fraud which would give a court of equity jurisdiction must be a fraud of which the plaintiff has a right to complain, and not every fraud the defendant may have perpetrated concerning the subject-matter in controversy. In the case of *Vance* v. *Burbank*, 101 U. S. 519, the supreme court said that the fraud which could be complained of in that case must be such as was practiced upon the unsuccessful party, and prevented him from fully exhibiting his case to the department; and that the unsuccessful party had nothing to do with the fraud practiced upon the United States. In that case the plaintiff sought to make the defendant a trustee of the title he had received from the government. If the fraud in this case is a matter exclusively between the United States and the said defendant, it is not one the plaintiff can bring an action for, or one to annul the contract made with said defendant by the United States. Fraud in a conveyance does not render the same void as to every one. The person deceived by the fraud has a right to rescind the contract induced by it, or affirm it, and sue for damages for the fraud perpetrated. I do not think plaintiff has a right to step into the place of the United States, and say: "For the fraud perpetrated upon the United States I will rescind this conveyance made to said defendant." The reason assigned for asking to have the patent set aside is that it prevents the plaintiff from receiving a patent to said premises from the United States. This may be an excuse for not issuing the patent to plaintiff, but not a legal one, if it is entitled to a patent to the premises. What would be the effect of annulling the patent to Mrs. Cannon? The decree would affect only the parties to this action, and, as far as the United States, which is not a party herein, and said defendant are concerned, the patent would still exist, (*Mowry* v. *Whitney*, 14 Wall. 434,) and plaintiff, I apprehend, would not have removed the obstacle in its way to a patent to said premises. Certainly there would be no compulsion on the part

of the commissioner of the general land-office to issue such a patent any more after such a decree than before it. If plaintiff can bring a suit to set aside this conveyance for fraud perpetrated on the United States, then it can maintain an action to set aside every patent made by the United States to any portion of an odd section within its grant, before as well as after the date of the same, unless prevented by the statute of limitations or the terms of its grant. As before stated, however, I cannot view this case in any other light than an action to determine the adverse title to a tract of land. That is the object of this suit.

The plaintiff has called the attention of the court to decisions in several of the states where it is held that actual possession is not necessary in order to maintain this action. In Illinois there is some statute which provides that this action can be maintained when the plaintiff is in possession of the premises, or they are unoccupied. *Hurdin* v. *Jones,* 86 Ill. 315. Where statutes similar to this have been enacted the United States courts have recognized the right to the relief awarded, and have enforced it. *U. S.* v. *Wilson,* 118 U. S. 89, 6 Sup. Ct. Rep. 991; *Holland* v. *Challen,* 110 U. S. 15, 3 Sup. Ct. Rep. 495; *Reynolds* v. *Bank,* 112 U. S. 405, 5 Sup. Ct. Rep. 213; *Chapman* v. *Brewer,* 114 U. S. 158, 5 Sup. Ct. Rep. 799. It is evident, without such statutes the general rule must prevail. Plaintiff, with considerable apparent confidence, cites the case of *Gage* v. *Kaufman,* 133 U. S. 471, 10 Sup. Ct. Rep. 406, as holding a different view than that expressed above. The allegation in that bill was, "seized in fee-simple." The term "seised" is equivalent to the term "possessed." "Seisin" means "possession." "Livery of seisin" meant "delivering possession." The allegation was equivalent to saying that plaintiff was in possession, and held a title in fee. 1 Daniell, Ch. Pr. (5th Ed.) 363. It is urged, however, that where there is an equitable ground for relief possessed by a party he can seek a court of equity, and that, when a court of equity has taken jurisdiction of the matter, it will proceed to determine the whole case. This is the general rule. In this case it is urged that the court may take jurisdiction in order to prevent a multiplicity of suits. The bill does, perhaps, show several parties; but, as the legal title, if any, is in plaintiff, it might bring one suit against all these parties. The fact that they may claim different portions of the same quarter sections of land in dispute makes no difference. They can all be joined as defendants in one action of law to recover the possession of the premises. That a bill in equity would not lie in an action of this nature for the reason it would prevent a multiplicity of suits was determined in the case of *City and County of San Francisco* v. *Beideman,* 17 Cal. 461. Where a bill fails to show any ground for equitable relief the defect is one of jurisdiction, and this court cannot proceed to determine the merits of the controversy. *Oelrichs* v. *Spain,* 15 Wall. 227, 228; *Litchfield* v. *Ballou,* 114 U. S. 190, 5 Sup. Ct. Rep. 820. Many other cases might be cited to the same effect.

The other points presented in the demurrer herein will therefore not be considered. The demurrer is sustained upon the ground that plaintiff's bill shows no ground for any equitable relief.