Selden, J.
 

 Although the Code of Procedure has abrogated the common law system of pleading, with all its technical rules, yet, in one respect, the new system which it has introduced bears a close analogy to that for which it has been substituted. The general denial allowed by the Code corresponds very nearly with the general issue in actions of assumpsit and of debt on simple contract, at common law. The decisions upon the subject, therefore, in the English courts, although not obligatory as precedents since the changes introduced by the Code, will nevertheless
 
 *291
 
 be found to throw much light upon the question presented here.
 

 While the general issue, both in assumpsit and debt, was, in theory, what the general denial allowed by the Code is in fact, viz., a simple traverse of the material allegations of the declaration or complaint, yet, from the different phraseology adopted in the two forms of action, a very different result was produced. The declaration, in debt, averred an existing indebtedness, and this amount was traversed by the plea of
 
 nil
 
 debet,in the present tense; hence, nothing could be excluded which tended to.prove that there was no subsisting debt when the suit was commenced. In assumpsit, on the contrary, both the averment in the declaration and the traverse in the plea were in the past, instead of the present, tense, and related to a time anterior to the com men cement of the suit. Under non assumpsit, therefore, so long as the rule of pleading which excludes all proof not strictly within the issue was adhered to, no evidence could be received except such as would tend to show that the defendant never made the promise. That this was the view taken of these pleas, in the earlier cases, is clear.
 

 In an anonymous case, before Lord Holt (1
 
 Salk.,
 
 278), it was adjudged
 
 “
 
 that, in debt for rent, upon
 
 nil debet
 
 pleaded, the statute of limitations may be given in evidence, for the statute has made it no debt at the time of the plea pleaded, the words of which are in the
 
 present
 
 tense.’ Again, in
 
 Draper
 
 v.
 
 Glassop
 
 (1
 
 Lord Ray.,
 
 153), the same judge said:
 
 “If
 
 the defendant pleads non assumpsit, he cannot give in evidence the statute of limitations, because the assumpsit goes to the
 
 prater
 
 tense; but upon
 
 nil debet
 
 the statute is good evidence, because the issue is joined
 
 per verba de present,if1
 

 We find, however, that a practice afterwards grew up, and came at last to be firmly established, of allowing, under the plea of non assumpsit, evidence of various defences, which admitted all the essential facts stated in the declaration but
 
 *292
 
 avoided their effect by matter subsequent, such as payment, accord and satisfaction, arbitrament, release, &c. The history and progress of this anomaly is easily traced. The •first departure from principle was in relation to the general issue in actions of
 
 indebitatus
 
 assumpsit. In these actions, the promise alleged being a mere legal implication, arising upon the facts stated, a traverse of the promise was of course equivalent to a traverse of the allegations upon which, it is predicated. Those allegations were regarded as, in substance, the same as in an action of debt upon simple contract; and hence the courts concluded that a plea which put them in issue should have the same effect as the plea of
 
 nil debet.
 
 That this was the reasoning originally resorted to is plain from some of the older cases on the subject. In
 
 Beckford
 
 v.
 
 Clarke
 
 (1
 
 Sid., 236),
 
 which was an action of assumpsit brought upon a special promise to secure goods from perils, those of the sea excepted, the Court of King’s Bench held that in assumpsit in fact, upon non assumpsit pleaded, a release could not be given in evidence as a defence, but on assumpsit in law it might. So in the case of
 
 Fits
 
 v.
 
 Freestone
 
 (1
 
 Mod.,
 
 210) it was held that, “In an action grounded upon a promise
 
 in law,
 
 payment before the action brought is allowed to be given in evidence upon non assumpsit; but when the action is grounded upon a special promise, then payment or any other legal discharge must be pleaded.”
 

 But, notwithstanding the distinction adverted to in these cases, the admission of the evidence, even in actions of
 
 indebitatus
 
 assumpsit, was a plain departure from the-issue upon non assumpsit, which was, in terms, that the defendant had not promised; a departure, however, supposed to be justified as a sacrifice of form to substance. But the courts having already sacrificed substance to form, by allowing an action of debt to be converted into assumpsit by the addition of a mere fictitious promise, had imposed upon themselves the necessity of adhering to this form.
 
 *293
 
 By disregarding it, a manifest incongruity in pleading was produced. Tested by the language of the record, there was no difference in the issue formed by the plea of non assumpsit, whether the promise was express or implied. The courts, therefore, lost sight, after a time, of the distinction upon which special defences were originally admitted in actions of
 
 Í7idcbitatus
 
 assumpsit alone, and, looking only at the record, took another stride, and admitted evidence of payment, release, arbitrament, &c., under non assumpsit, without regard to the nature of the promise.
 

 To justify this a new theory was necessary, and we find it broached by an early writer. (
 
 Gilb. C. P.,
 
 63.) It was, that the gist of the action of assumpsit was the fraud or deceit practiced by the defendant in not performing his promise; and that this was put in issue by the plea of non assumpsit. Hence, any evidence showing that there was no existing obligation at the commencement of the suit, and, consequently, no fraud which was injurious to the plaintiff, would support the plea. The same reasoning is also adopted by a later writer upon pleading.
 
 (Lawes 071 PL,
 
 520, 521.) It is, however, manifestly false and illogisal. Fraud or deceit never constituted the gist of the notion. On the contrary, it has ever been held that fraud need not be alleged, and, if alleged, need not be proved. All the other theories, invented to account for the anomaly, were equally fallacious.
 

 These errors proved, in their consequences, subversive of Borne of the main objects of pleading. They led to surprises upon the trial, or to an unnecessary extent of preparation. The courts, however, found it impossible to retrace their steps, or to remedy this and other defects in the system of pleading, without authority from parliament. This authority was at length conferred by the act of
 
 3d
 
 and
 
 4th William IV., ch.
 
 42, § 1, and the judges in Hilary term, thereafter, adopted a series of rules, one of which was to correct the errors which have been adverted to. (2
 
 Cromj) Mees.,
 
 10.)
 
 *294
 
 The first rule adopted, under the head of assumpsit, provided in substance that the plea of non assumpsit should operate, where the promise was express, as a denial of the promise, and, where it was implied, of the matters of fact upon which the promise was founded.
 

 The object of this rule was to restore pleading in assumpsit to its original logical simplicity. It was obviously intended as a mere correction of previous judicial errors. It interprets the plea of non assumpsit strictly according to its terms, and thus plainly indicates that the courts had erred in departing from those terms. That this was the view of the judges, is shown by the different course taken in regard to the plea of
 
 nil debet.
 
 As this plea, construed according to its terms, included every possible defence within the issue which it formed, the judges did not attempt to change the import of those terms, but abrogated the plea. Rule two, under the head of “ Covenant and Debt,” provides that “ The plea of
 
 nil debet
 
 shall not be allowed in any action;” and rule three substitutes the plea of
 
 nunquam indebitatus
 
 in its place. Thus the whole practice, which had continued for centuries, of receiving evidence of payment, and other special defences under the plea of
 
 nil debet
 
 and non assumpsit, was swept away.
 

 There are several inferences to be drawn from this brief review, which have a direct bearing upon our new and unformed system of pleading in this state. The first is, that no argument in favor of allowing payment, or any other matter in confession and avoidance, to be given in evidence under a general denial, can be deduced from the former practice in that respect, as this practice has been abandoned in England, not only as productive of serious inconvenience, but as a violation of all sound rules of interpretation.
 

 A second inference is that, in regard to pleading, it is indispensable to adhere to strict logical precision in the interpretation of language. The anomaly which has been
 
 *295
 
 referred to was wholly produced by the slight deviation from such precision in the action of
 
 indebitatus
 
 assumpsit which has been pointed out.
 

 But the most important inference to be deduced from the historical sketch just given consists in an admonition to adhere rigidly to that rule of pleading which permits a traverse of facts only, and not of legal conclusions; and this brings us to the pivot upon which the point under consideration must necessarily turn. The counsel for the defendant insists that, as the answer controverts every allegation of the complaint, it puts in issue the allegation with which it concludes, viz., that there was due to the plaintiff at the commencement of the suit, over and above all payments, &c., the sum of $134. But this allegation is a mere legal conclusion from the facts previously stated. Its nature is not changed by the addition of the words “ over and above all payments.” No new fact is thereby alleged. The plaintiff voluntarily limits his demand to a sum less than that to which, under the facts averred, he would be entitled.
 

 Were courts to allow allegations of this sort to be traversed, they would fall into the same difficulty which existed in regard to the plea of
 
 nil debet,
 
 and which led the judges in England to abolish that plea, it would be impossible under such a rule, in a great variety of cases, to exclude any defence whatever, if offered under an answer containing a general denial. In England, as we have seen, after centuries of experience, it has been found most conducive to justice to require the parties virtually to apprise each other of the precise grounds upon which they intend to rely; and the system of pleading prescribed by the Code appears to have been conceived in the same spirit. It was evidently designed to require of parties, in all cases, a plain and distinct statement of the facts which they intend to prove; and any rule which would enable defendants, in a
 
 *296
 
 large class of cases to evade this requirement, would be inconsistent with this design.
 

 The case of
 
 Van Gieson
 
 v.
 
 Van Gieson
 
 (12
 
 Barb. S. C. R.,
 
 520), subsequently affirmed in this court, contains nothing in opposition to the doctrine here advanced. That case simply decided that where the complaint contained an averment of non-payment, a plea of payment formed a complete issue. That payment having been denied in the complaint, it was unnecessary to repeat that denial in a reply. My conclusion therefore is, that neither payment nor any other defence, which confesses and avoids the cause o' action, can in any case be given in evidence as a defenci under an answer containing simply a general denial of th allegations of the complaint.
 

 The next question is, whether evidence of payment either in whole or in part, is admissible in mitigation o damages. As the Code contains no express rule on tin subject of mitigation, except in regard to a single class of actions, this question cannot be properly determined without a recurrence to the principles of the common law. By those principles, defendants in actions sounding in damages wTere permitted to give in evidence, in mitigation, not only matters having a tendency to reduce the amount of the plaintiff’s claim, but in many cases facts showing that the plaintiff had in truth no claim whatever. It was not necessarily an objection to matter offered in mitigation, that if properly pleaded it would have constituted a complete defence.
 

 Thus in
 
 Smithies
 
 v.
 
 Harrison
 
 (1
 
 Lord Raym.,
 
 727), the truth of the charge was received in mitigation in an action of slander, although not pleaded^ Again, in the case of
 
 Abbot
 
 v.
 
 Chapman
 
 (2
 
 Lev.,
 
 81), which was an action of assumpsit, the defendant having given in evidence a release, Lord Holt said that “he should have pleaded
 
 exoneravit,
 
 but that the evidence was admissible in mitigation of damages.” So, too, in the modern case of
 
 Nicholl
 
 v.
 
 Williams
 
 (2
 
 Mees.
 
 
 *297
 

 & Wells., 758),
 
 which was assumpsit for use and occupation, the defendant, having pleaded payment to part of the demand and non assumpsit to the residue, was permitted upon the trial to prove payment in full; but it was held that the evidence could only go in mitigation, and that the plaintiff was entitled to judgment for nominal damages.
 

 It is obvious that this practice was open to serious objections. It enabled defendants to avail themselves of their defences for all substantial purposes, without giving any notice to the plaintiff. Its unjust operation in the action of slander was observed at an early day, and an attempt was made in the case of
 
 Underwood
 
 v.
 
 Parks
 
 (2
 
 Stra.,
 
 1200) to correct the evil, so far as that action was concerned. But in regard to payment, release, &c., so long as they were received in evidence under the general issue in bar, no objection could be made to allowing them in mitigation. As soon, however, as this practice was abrogated by the rules of Hilary term,
 
 4th William IV.,
 
 the question as to the admissibility of payment in mitigation at once arose.
 

 In
 
 Lediard
 
 v.
 
 Boucher
 
 (7
 
 Carr. & Pa.,
 
 1), Lord Denman admitted evidence of part payment under the general issue on the ground that the rule of Hilary term meant “ a complete payment, which is an
 
 answer
 
 to the action, and not a partial payment which merely goes to the amount of the damages;” and in
 
 Shirley
 
 v.
 
 Jacobs
 
 (7
 
 Carr. & Pa., 3),
 
 the Court of Common Pleas held that payment in full might be received in mitigation. Tindal, Ch. J., says: “I take the meaning of the rule to be this, that ‘ payment ’ is used to denote that which is intended as an answer to the action. In the present case the evidence was not offered with that view; it was only offered in reduction of the damages.”
 

 These decisions soon led to the adoption of the rule of Trinity term (Isi
 
 Viet.),
 
 by which it is provided that “ Payment shall not in any case be allowed to be given in evidence
 
 in ? eduction of damages
 
 or debt but shall be
 
 *298
 
 pleaded in bar.” (4
 
 Mees. & Wells,
 
 4.) A question may arise whether by the word “ payment,” as used in this rule, payment in full only, is meant, or whether it includes partial payment also. The latter, however, must, I apprehend, be its true construction. It would be found as impossible to discriminate between partial payment and payment in full, when offered in mitigation, as it was between proof of the truth of the charge and evidence tending to prove it true in the action of slander after the rule adopted in
 
 Underwood
 
 v.
 
 Parks (supra).
 
 Payments may be made at different times and in different sums, the evidence in regard to some of which may be conclusive, and as to others, doubtful; so that in many cases it would not be known whether the proof would establish complete or only partial payments without first taking the verdict of the jury.
 

 The rule of Trinity term (1st
 
 Viet.),
 
 therefore, must be construed to exclude evidence not only of complete but of partial payment in mitigation, without plea. Such a rule does not lead to the embarrassment which followed the rule of
 
 Underwood
 
 v.
 
 Parks.
 
 That rule, in effect, excluded all evidence in mitigation, unless pleaded, and there was -no way in which it could be pleaded. In regard to payment there is no such difficulty, as that may be pleaded to a part as well as to the whole of a demand. It is not essential to the validity of a plea that it should answer the whole of a declaration or complaint, or of any single count. It is sufficient if it is an answer to so much as it professes to answer. (1
 
 Saund.,
 
 299
 
 a, note b; Barnes
 
 v.
 
 Hunt,
 
 11
 
 East,
 
 451;
 
 Nicholl
 
 v.
 
 Williams, 2 Mees. & Wells,
 
 758.)
 

 It has, however, been supposed that a defence could not be interposed to part of a single count, except where such count was capable of a definite division into distinct and independent parts. But some of the modern English cases, and especially the case of
 
 Henry
 
 v.
 
 Earl
 
 (8
 
 Mees. & Wells,
 
 228), would seem to show that it is not now so regarded in England, at least so far as the plea of payment is con
 
 *299
 
 cerned; and that that plea may be interposed in an action of debt, to any portion of an entire demand. This consequence, indeed, would seem necessarily to follow from the new rules of
 
 4th William IV.,
 
 and 1st
 
 Victoria,
 
 even if it was otherwise before. The matter is now placed, therefore, in the English courts, upon a footing of perfect justice. If the demand for which an action is brought has once existed, and the defendant relies upon its having been reduced by payments, he must appear and plead. It is to be determined in this case whether we have kept up with those courts in our measures of reform.
 

 The rules of Hilary term
 
 (lih William IV.),
 
 and the system of pleading prescribed by the Code, have, in one respect, a common object, viz., to prevent parties from surprising each other, by proof of which their pleadings give no notice. Those rules, according to the construction put upon them by the courts, were found inadequate, so tar as proving payment in mitigation is concerned, to accomplish the end in view; and it became necessary to adopt the rule of Trinity term
 
 (1st Viet.),
 
 to remedy the defect. If the provisions of the Code are to receive, in this respect, a construction similar to that given to the rules, of Hilary term, then an additional provision will be required to place our practice upon the same basis of justice and convenience with that in England.
 

 But is such a construction necessary ? Section one hundred and forty-nine of the Code provides that the answer of a defendant must contain: First. A general or specific denial of the material allegations of the complaint; and, Second. A statement of any new matter constituting a defence or counter claim.
 

 The language here used is imperative; •*must contain.” It is not left optional with a defendant whether he will plead new matter or not; but all such matter, if it constitute a “ defence or counter claim,” must be pleaded; and this is in entire accordance with the general principles of pleading,
 

 
 *300
 
 The word defence, as here used, must include partial, aa well as complete defences; otherwise, it would be no longer possible to plead payment in part of the plaintiff’s demand, except in connection with a denial of the residue; since section one hundred and fifty-three provides that “the plaintiff may, in all cases, demur to an answer containing new matter, where, upon its face, it does not constitute a counter claim or defence.” Such a restriction would be not only contrary to the general spirit of the Code in regard to pleading, but would obviously conflict with section two hundred and forty-four, subdivision five, which provides that “where the.answer of the defendant expressly, or by not denying, admits part of the plaintiff’s claim to be just, the court, on motion, may order such defendant to satisfy that part of the claim,” &c. The words “ expressly, or by not denying,” were, it is true, inserted by amendment since the issue in this case was joined; but they do not change the meaning of the sentence.
 

 The question to be determined, then, is, whether these provisions are limited in their operation to cases where- the defendant seeks to avail himself of new matter strictly as a defence, either in full or pro
 
 tanto,
 
 or whether they extend to the use of such matter in mitigation. Were there nothing in the Code to indicate the intention of the legislature on this subject, we might feel constrained to follow the construction put by the English courts upon the rules of Hilary term; although it is evident, from the subsequent adoption of the rule of Trinity term (ls¿
 
 Viet.),
 
 that this construction did not accomplish all that was intended. But section two hundred and forty-six provides that in all actions founded upon contract, brought for the recovery of money only, in which the complaint is sworn to, if the ,defendant fails to answer, the plaintiff is entitled absolutely to judgment for the amount mentioned in the summons, without any assessment of damages. It is plain that, in this class of actions, defendants who have paid part only of
 
 *301
 
 the plaintiff’s demand must appear and plead such part payment, or they will lose the benefit of it altogether The provisions of section three hundred and eighty-five afford no adequate remedy in such cases, because the offer to allow judgment for a part does not relieve the defendant from the necessity of controverting the residue by answer.
 

 Section two hundred and forty-six could never have been adopted, therefore, without an intention, on the part of the legislature, that section one hundred and forty-nine should be so construed as to require defendants, at least in this class of actions, to set up part payment by answer; and it is difficult to suppose that they intended the section to receive one construction in one class of actions and a different one in another.
 

 My conclusion, therefore, is, that section one hundred and forty-nine should be so construed as to require the defendants, in all cases, to plead any new matter constituting either an entire or partial defence, and to prohibit them from giving such matter in evidence upon the assessment of damages when not set up in the answer. Not only payment, therefore, in whole or in part, but release, accord and satisfaction, arbitrament, &c., which may still, for aught I see, be made available in England in mitigation of damages, without plea, must here be pleaded. In this respect, our ¡new system of pleadings under the Code is more symmetrical than that prescribed by the recent rules adopted by the English judges.
 

 The judgment of the Superior Court of Buffalo should be affirmed.
 

 Shankland, J., delivered an opinion to the same effect; Comstock, Brown and Bowen, Js., concurred; Paige, J., expressed no opinion, and Denio, Ch. J., and Johnson, J., dissented.
 

 Judgment affirmed.