CHARLES BAKER and EDWIN R. PLUMB, Respondents, *v.* SANFORD E. LORING, Appellant.

*Payment — must be pleaded — entries in books of account.*

Payment is an affirmative defense and should be pleaded; it cannot be proved under a general denial.

In an action brought to recover the price of certain lumber alleged to have been sold to the defendant, it appeared that the salesman of the plaintiff knew the prices to be charged therefor; that each day when the lumber in question was loaded the salesman made a memorandum of the measurement of the load and charged the amount up every night; that he took the memoranda to the bookkeeper of the plaintiff and called the amounts off to him. It further appeared that this book of the salesman was burned. The bookkeeper testified that the salesman would come into the office late in the afternoon, read off the charges, and that the bookkeeper would write them down; that the charges were put on the day book and that book was also burned; that he posted from the day book into the ledger, giving the aggregate amount only in dollars and cents; that he made the computations himself, and that they were correct and were carried out on the ledger as he made them.

*Held,* that the defendant's motion for a nonsuit was properly denied.

APPEAL by the defendant, Sanford E. Loring, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Onondaga on the 6th day of March, 1895, upon the report of a referee.

It is alleged in the complaint and admitted in the answer that the plaintiffs are co-partners doing business at Syracuse under the firm name and style of C. H. Baker & Co. It is alleged in the complaint that the plaintiffs, at the request of the defendant, sold and delivered to the defendant "goods, wares and merchandise, consisting of lumber and building materials and the cartage of the same, of the value and agreed price of $2,551.73, and which sum they were reasonably worth; that said goods were sold and delivered between the 17th day of January, 1893, and the 15th day of May, 1893, * * * and that no part thereof has been paid except the sum of $1,550, paid to apply thereon at various times prior to June 2, 1894; and that the defendant is justly indebted to the plaintiff in the sum of $1,001.73, with interest thereon from May 15, 1893."

The answer, after admitting the co-partnership, contains simply the following words: "That he denies that he has any knowledge

·or information thereof sufficient to form a belief as to the truth of ·any other allegations in said complaint contained."

*Miller, Gridley & Pratt,* for the appellant.

*Homer Weston,* for the respondents.

HARDIN, P. J. :

Under the pleadings as they were framed we think the defendant, in order to be entitled to give proof of payment of the indebtedness stated in the complaint, was called upon to aver in his answer a defense of payment. (*McKyring* v. *Bull,* 16 N. Y. 297; *Lent* v. *N. Y. & M. R. Co.,* 130 id. 504.) Plaintiffs withdrew the objection, however, to defendant's claim to prove that one Baldwin had paid, on behalf of the defendant, the sum of $900 and $1,000 other than the $1,550, shown to have been paid by the defendant on account. Notwithstanding that withdrawal no proof was given in support of the offer made. The witness Miller testified that he remembered putting up lumber for the defendant, and there was a large amount of it; it was delivered some time in the winter of 1893; defendant gave his orders and the lumber was loaded and started off for Walton street. It was for Eager and Phelps; it was all taken out of the yard, and, the witness added, "kept my measurements of loads by the piece; the thick lumber was in pieces and the boards was in feet; kept memorandum of these loads in a book and charged them up every night; I took them to Mr. Bannon; he was the bookkeeper. I called them off to him. I have not the book. It·was in the office and it was burned up. * * * My business was salesman and I was located in the yard. I took most of the defendant's orders directly from him; he might have telephoned some of the orders. I don't think he left half of the orders in the office; wouldn't swear he did not; I think he gave the bulk of them direct to me, and I recorded them upon my book, and no one had charge of that book but myself. * * * The fire was in 1894; I called off the record I made ·in my book to the bookkeeper, Mr. Bannon, every day; I crossed off my book. The price I called I read from my book. I was watching him write, standing beside him, and after he had recorded or undertaken to record what I had given him."

Baker, one of the plaintiffs, testified that the defendant was in his office in regard to the lumber in question; he added "I made an arrangement with him in regard to it sometime in the month of January, 1893. I think the arrangement was he was to have hemlock delivered on the premises for $11.75 per thousand. I saw some of the lumber after it had been delivered. It was delivered in large quantities. I saw some of it on the ground. Was there occasionally while it was being delivered, and know some of it was delivered. I know that we presented bills as we wanted money. He raised no objections to the lumber. I only know the number of feet delivered from the books. Our employees made the entries in the books." This witness also testified : " While he was getting lumber for the Phelps building he got some for the Eager building. I think I personally presented no bills to the defendant; I could not say. I talked with him about his indebtedness to us. That business was left to the bookkeeper part of the time, and part of the time I presented them. I know they were presented. * * * One time Mr. Loring came to the office, and a bill was handed to him. I know I would sometimes take bills and present them. I think I did personally to Mr. Loring. I think I presented bills personally to Mr. Loring. I saw Mr. Loring several times in regard to the payment of this bill." The witness also testified that it was his recollection that the bills were itemized; and he says "the itemized delivery books spoken of by Mr. Miller were burned. The one Miller kept was burned. My ledgers were saved from the fire. In them the transactions are carried down but not itemized."

The plaintiffs called the witness Bannon, who testified that he had charge of the books, and that he had the ledger present in court; and he added : " I am acquainted with Mr. Miller who has testified. Late in the afternoon he would come into the office and read off his charges, and I would write them down. They were put on the day book and that book was burned. I posted from the day book into the ledger, giving the aggregate amount only in dollars and cents. The computations were made by myself. I made them correctly, and carried them out on the ledger as I made them. There are about seventy-five separate charges. Nine-tenths of the lumber was two-inch planks. They used the timber and then laid the brick. I am not

able to state the aggregate amount of those items without reference to the books. By referring to the books I can state the amount. I know the prices charged, hemlock $11.75 large percentage. There might have been two to three thousand feet that was not hemlock. I prepared and presented or mailed to Mr. Loring itemized bills, or handed them to Mr. Baker. I know there were itemized bills of this entire lumber sent by mail or given to Mr. Loring." Subsequently the witness Baker was recalled and he testified: "The prices that were charged were agreed upon between Mr. Loring and myself. I am not positive whether there was a special understanding in regard to these different items. The salesman and bookkeeper knew the prices. I fixed the prices and my workmen worked under them. Mr. Bannon knew the prices." The witness Bannon was then recalled and he testified: "I made the charges for this lumber at the market price, except the hemlock. The lumber was charged at the market price." After this evidence was given, the witness testified that the bill of items was in his handwriting and that it was an exact copy of the ledger, and that the footings were the same as those in the ledger. Thereupon the defendant's counsel conceded that the bill of items was a copy of the two columns of the figures of the ledger. The witness added: The aggregate amount charged was $2,551.73, and that the amount deducted for payment was $1,550, leaving a balance of $1,001.73. In the course of his cross-examination he said: "I made out the itemized statements of this account against Mr. Loring on two or three different occasions before and after the Phelps job was finished. I presented one to him. He said nothing about it. He came into the office two or three times and talked about payment."

After this proof was given, we think the learned referee committed no error in refusing defendant's motion for a nonsuit. The defendant was sworn as a witness in his own behalf and, in the course of his testimony, said: "I received itemized statements of the lumber delivered for the Phelps and Eager buildings. I don't remember they were presented personally by Mr. Baker." And he added: "I have had many talks with Mr. Baker since the lumber was sold for the Phelps building. The question of the quantity of lumber did not arise. I have never made any objection to him that the quantity of lumber was not delivered. I was generally at the

building twice a day.   I knew Mr. Baker was delivering lumber. Mr. Baker has talked with me about paying these bills.   The amount of the bill has been presented to me.   I understood the amount." The witness further testified : " When the bills came to me, I turned them over to Mr. Coon.   He has made no detailed report."

The witness Coon, who was called by the defendant, testified, viz. : " During the erection of the Phelps building, defendant gave me bills he had received from plaintiffs.   The bills he gave me was one of those large foolscap bills, two or three pages.     *     *     *     I received the lumber ; I did not measure it.     *     *     *     The long bill was presented by Mr. Loring to me during the summer after the work was finished.   There was a large quantity of lumber used."

It appears by the testimony given by the plaintiffs that all the lumber charged to the defendant was " what was delivered on the Eager and Phelps jobs."

We think the conclusion of fact stated by the referee to the effect that the defendant is indebted to the plaintiffs for balance due in the sum of $998.23, with interest thereon from June 13, 1894, is sustained by the evidence, and that the conclusion of law, that by reason thereof the plaintiffs are entitled to recover, should be sustained.

The judgment should be affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with costs.