### HILL v. KENNEDY.

(Circuit Court of Appeals, Second Circuit. May 2, 1910.)

#### No. 212.

CONTRACTS (§ 352*)—ACTION FOR BREACH—QUESTIONS FOR JURY.

A written promise by defendant to pay to plaintiff a stated sum in consideration of "services in securing" a theater *held* susceptible of a construction making it apply to services yet to be rendered, and to render it error to direct a verdict for plaintiff in an action to recover such sum for services alleged to have been previously rendered, where defendant gave evidence tending to show that the theater had not then been, and was not thereafter, secured within the meaning of the contract.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 352.*]

Coxe, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by Henry D. Kennedy against Gus Hill. Judgment for plaintiff, and defendant brings error. Reversed.

Leon Laski (G. E. Joseph, of counsel), for plaintiff in error.
J. L. Hill, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The complaint, after averments as to citizenship, alleged: (1) That between May 17 and June 5, 1905, at the request of defendant plaintiff performed labor and services, to wit, secured the Auditorium Theater of Philadelphia for [an association in which defendant was interested]; (2) that the reasonable value of such services was $5,000; (3) that on June 5, 1905, defendant promised to pay him for such services $5,000 on or before September 1, 1905 [or to give him, at his election, a half interest in a burlesque attraction].

---

Each of these allegations was squarely denied by the answer and the parties came into court to try the issues thereby raised. The plaintiff testified that in April, 1905, defendant asked him to go to Philadelphia and see if he could make arrangements with the owner of the theater for purchasing it; that he made several trips to Philadelphia, saw the owner, and obtained from him an agreement to sell the property conditioned on the owner being able by September 1st to get rid of a pending lease to one Lederer and his partners, which he expected to do through the tenants' defaulting on their rent; that he reported this to defendant, who made the agreement with the owner May 20th, paying $10,000 on account; that this came to nothing because "on or about September 1st Gilmore [the owner] was unable to give possession and the money was returned and the deal declared off"; that, while negotiations with Gilmore were pending, plaintiff on May 4th met Lederer, who offered to sell his lease to defendant; that he reported this to defendant, who said, "Let it drop;" that on May 17th defendant told him that he felt Gilmore would not be able to deliver the property on September 1st and that he must secure the theater, and asked plaintiff if he would not reopen negotiations with Lederer with a view to effecting some arrangement whereby he could feel sure of having the theater for the following season; that the subject of compensation was discussed and defendant said he would give either $5,000 or a half interest in a burlesque show, to which plaintiff agreed; that thereafter he reopened negotiations with Lederer, and by June 1st had secured an offer from the latter, which he submitted to defendant, whereupon both parties went to Lederer's office in Philadelphia on Sunday, June 4th, and after some further discussion terms were agreed upon and the use of the theater secured. The next day defendant saw plaintiff, referred to what he had accomplished, and asked him to reduce their understanding to writing, which was done; and the next day plaintiff went to Maine, where he remained some time. The following letter was then put in evidence:

"June 5, 1905.

"Mr. H. C. Kennedy, 216 Eighth Avenue, Brooklyn, N. Y.—Dear Kennedy: In consideration of your services in securing the Auditorium Theater, Philadelphia, Pa., for the Columbia Amusement Company & Traveling Manager's Association, I hereby agree to give you five thousand ($5,000) as payment for said services on or before September 1, 1905. Or, if you prefer it, I will give you, without cost to you, a full half interest in one of my burlesque attractions, or one of Mr. Sam Scribner's. I will name the attraction before the opening in ensuing season, and you can then elect to accept either the money or half interest as specified. Gus Hill."

The introduction of this particular piece of written evidence in no way changed the issues presented by the pleadings. It was open to defendant to dispute any of the averments on which plaintiff had chosen to found his prayer for relief. The case cited by plaintiff, McKyring v. Bull, 16 N. Y. 297, 69 Am. Dec. 696, is not applicable. There the complaint alleged that plaintiff did labor and service at defendant's request which was worth a certain specified sum. The answer consisted only of a general denial, and it was held that under such an answer defendant could not prove payment. No such matter

of avoidance is here relied upon. The contention of defendant is that under the pleadings he was entitled to offer evidence tending to show that plaintiff was not employed as averred in the complaint, that he did not render services, and that defendant did not promise to pay him. The trial judge held that:

"In the ordinary construction of the English language the letter of June 5, 1905, refers to services which have taken place up to that time, and it does not make any difference whether the services at that time have resulted in a complete making of the contract by which the Auditorium Theater has been secured; if there have been no effective services rendered, if anybody chooses to make such an agreement he could make it."

It does not seem to us that the contract is so specific. It refers to "services in securing the theater," and may fairly be construed as covering all such services, whether they were rendered prior or subsequent to June 5th. Plaintiff, however, has expressly confined his claim to services rendered between May 17th and June 5th. The letter also is ambiguous as to what constitutes "securing the theater," whether by purchase of the property, by lease, or by obtaining the right to exhibit plays. Plaintiff, however, made no claim for any services in connection with Gilmore, the owner, because all those terminated before the date named in the complaint.

The court directed a verdict for the plaintiff for the full amount $5,000 with interest. On the letter of June 5th and plaintiff's testimony this would have been a proper disposition of the case; but the defendant gave evidence which in our opinion should have sent the case to the jury. He testified: That he himself informed plaintiff about May 4th that he could buy the Auditorium Theater very reasonably, and asked him (plaintiff) if he would like to go in and buy it, to which the latter replied:

"All right; what is the matter with you and I and Scribner buying it?"

That thereupon plaintiff went over to Philadelphia, saw Gilmore, and on his return brought back the agreement to sell, which defendant signed, and that down to that time nothing was said between the parties as to any compensation. Gilmore had agreed in writing with Kennedy on May 10th to pay him $5,000 if the sale were effected. Defendant further testified that he never directed plaintiff to do anything with respect to obtaining any right to play in the Auditorium Theater at any time; that when he went over to Philadelphia to see Lederer and his partners on Sunday, June 4th, Kennedy invited himself, "asked if he couldn't go"; and that, after talking the matter over about playing the shows for a couple of hours, nothing came of it, "we [defendant and Lederer and his partners] could not come to any agreement or understanding"; but that later in June, in witness' own office in New York, he saw Lederer and his partners again, and after negotiations finally concluded an arrangement with them, and fixed the terms with which plaintiff had nothing at all to do.

As to the letter of June 5th defendant testified that he refused to sign the paper half a dozen times, and finally consented to do so only on plaintiff's assurance that he wanted it merely to show people, so they wouldn't laugh at him for not getting anything, and that he

would never use the paper in any shape, manner, or form, but would return it to plaintiff. We do not undertake to express any opinion of the weight to be given to this testimony of defendant as to the signing and delivery of the paper, nor, indeed, as to the other matters in controversy; but we are of the opinion that, upon the record as it stood when the case was closed, defendant was entitled to have it submitted to the jury.

Judgment reversed.

COXE, Circuit Judge (dissenting). In my opinion the Circuit Court reached the only result possible under the pleadings and proofs. The complaint alleges that between May 17 and June 5, 1905, the plaintiff performed services for the defendant, at his request, reasonably worth $5,000 and on the 5th day of June the defendant promised to pay therefor the said sum. The answer was a general denial.

The plaintiff proved his cause of action by the written agreement of June 5, 1905, quoted in the opinion of the court, which has the characteristics of a promissory note. It is not disputed that at the time this agreement was signed some services had been performed by the plaintiff and I agree with the trial judge in thinking that this writing stated the actual agreement between the parties. Judge Holt says:

"It is not contingent upon his successfully doing anything after that, and whether the price fixed was high or low, is not of any consequence."

The writing of June 5th was either a valid, binding contract or it was not. To my mind it is as clear as the English language can make it; but in any view its construction was for the court and not the jury.

The sole question was "whether the contract was performed" and on this question only did the defendant ask to go to the jury. Before the jury could pass upon any question of fact it was necessary for the court to hold that the defendant, after having promised in writing, to pay the plaintiff $5,000 for his services, might show, first, that the plaintiff performed no services, and, second, that if he did perform services they were not worth $5,000. There being no allegation or proof of fraud, misrepresentation or mistake, I fail to see how any question of fact is disclosed by the record. The defendant testified regarding the agreement of June 5th that the plaintiff said:

"I will never use that paper in any shape, manner or form. A lot of people said he was getting the laugh because he was not getting anything and I said, Harry, I will sign on that condition. I simply signed it and he told me he would return me that paper."

The character of the defense, if any, to be formulated from this testimony, it is not necessary to specify for the reason that it is not one which can be proved under a general denial. If the defendant intended to prove that the contract was signed not to be enforced but simply to enable the plaintiff to silence those who were inclined to laugh at him, it was, at least, his duty to inform the plaintiff by his answer that such was his intention.

In my opinion the judgment should be affirmed.