ALTMAN v. BUNGAY CO. OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. April 3, 1914.)

1. PLEADING (§ 121*)—FORECLOSURE OF LIEN—DENIAL—FRIVOLOUS DENIAL.

A denial of knowledge or information sufficient to form a belief, as to allegations of the complaint in an action to foreclose a tax lien, that the purchaser at the sale duly assigned the transfer of the tax lien and all moneys due thereunder to plaintiff, was not frivolous, and not objectionable as raising no issue on the ground that the matters attempted to be denied were of public record.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 245–248; Dec. Dig. § 121.*]

2. PAYMENT (§ 65*)—ISSUE.

While, as a rule, payment is an affirmative defense, where a cause of action for the recovery of a distinct sum is based upon nonpayment, the burden of pleading and proving nonpayment is upon plaintiff, so that the fact of nonpayment is put in issue by a denial.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 162–175, 196, 197, 199–201; Dec. Dig. § 65.*]

3. MUNICIPAL CORPORATIONS (§ 980*)—FORECLOSURE OF LIEN—PLEADING.

Greater New York Charter (Laws 1901, c. 466, as amended by Laws 1908, c. 490) § 1032, provides that the aggregate amount of each tax lien transferred pursuant to this title shall be due in three years from the date of the sale, and until such amount is fully paid, the holder of the transfer of tax lien shall be entitled to receive interest, and at his option the aggregate amount shall become due after default in payment of interest for 30 days, or after default for six months after the delivery of transfer of tax lien in the payment of any taxes, etc., which become a lien on the day of the date mentioned in the advertisement of the sale, as stated therein, of the tax lien transferred by such transfer of tax lien, and section 1035 (amended by Laws 1908, c. 490, and Laws 1911, c. 65) provides that, if the amount of any tax lien which was transferred by a transfer of tax lien shall not be paid when, under its terms, the amount

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is due, the holder of the lien may maintain an action to foreclose it. *Held*, that if three years had not elapsed since the date of sale when an action was commenced to foreclose a tax lien, plaintiff must allege that the date of payment had been accelerated for one of the statutory reasons, specifying the particular reason, and an allegation that defendants have failed to pay the taxes due on the property, as required by chapter 17, was insufficient, it being necessary to allege the date specified in the advertisement of sale as the date when the tax was transferred to plaintiff that on or after that date taxes as specified became a lien on the property; the date of the delivery of the transfer of tax lien, and that the subsequent liens have not been paid, but even a proper allegation of nonpayment would be put in issue by a mere denial without affirmatively alleging payment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. § 980.*]

**4.** MUNICIPAL CORPORATIONS (§ 980*)—FORECLOSURE OF TAX LIEN—ALLEGATIONS OF COMPLAINT.

The complaint, in an action to foreclose a tax lien, was defective for not alleging that, at the time of the sale, there were unpaid taxes, assessments, or water rents for which the city of New York had a lien which it could sell.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. § 980.*]

**5.** MUNICIPAL CORPORATIONS (§ 980*)—FORECLOSURE OF TAX LIEN—ALLEGATIONS OF COMPLAINT.

The complaint, in an action to foreclose a tax lien for property sold by the city of New York for taxes, should allege that the necessary statutory proceedings were duly had before the sale; the statute being the city's only authority for selling and transferring its lien.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. § 980.*]

**6.** MUNICIPAL CORPORATIONS (§ 980*)—FORECLOSING TAX LIEN—ALLEGATIONS OF COMPLAINT.

Greater New York Charter, § 1032 (Laws 1901, c. 466, as amended by Laws 1908, c. 490) provides that the aggregate amount of each tax lien transferred shall be due in three years from the date of sale, and until such aggregate is paid the holder of the transfer of tax lien shall receive interest thereon from the date of sale, and at his option the aggregate amount shall become payable after default in the payment for 30 days, or default for six months after the delivery of transfer of tax lien in payment of any taxes, etc. *Held*, that where an action to foreclose a tax lien was brought within three years after the date of sale, the complaint should allege that the holder of the transfer of tax lien elected to consider the amount due by failure to pay subsequent taxes, etc., the mere failure to make such payment not accelerating the time for bringing the action without such election.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. § 980.*]

Appeal from Special Term, New York County.

Action by Aron Altman against the Bungay Company of New York and others. From an order striking an answer as frivolous and granting judgment for plaintiff on the pleadings, the defendant named appealed. Reversed, and motion denied.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

Roy C. Gasser, of New York City, for appellant.
Theodore I. Schwartzman, of Brooklyn, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J.  This is an action to foreclose a tax lien under the provisions of chapter 17, tit. 5, of the Greater New York Charter (Laws 1901, c. 466, as amended by Laws 1908, c. 490, and Laws 1911, c. 65). By the terms of section 1035 such an action is to be "regulated by the provisions * * * of law, and rules of practice applicable to actions to foreclose mortgages on real property," except as otherwise especially provided in the act.  The exceptions are of minor importance.  The general scheme of the title is that when taxes, assessments, or water rates, which are by law made a lien upon real property, shall remain unpaid and overdue for a certain period, the city may sell at auction and transfer to the purchaser thereat the lien upon the real estate for the amount of the unpaid charges, which lien the purchaser may at the time, and by the means provided in the act, proceed to foreclose by action.

The complaint in the present case alleges in its first and second paragraphs that at a public auction held on April 21, 1913, one Lillian C. Schwartzman purchased and became the owner of a tax lien affecting certain real estate in the borough of the Bronx, in the city of New York, and that the transfer thereof was duly entered as a public record.

The third paragraph alleges that on June 2, 1913, the said Lillian C. Schwartzman duly sold, assigned and transferred the said transfer of tax lien, and all moneys due and to become due thereunder to the plaintiff.

The fourth paragraph reads as follows:

"That the defendants have failed to pay the taxes which became due on said property, as required by the provisions of chapter 17, tit. 5, of the Greater New York Charter."

The fifth paragraph alleges that there is now due upon the said transfer of tax lien the sum of $15.06 with interest.

[1] The defendant the Bungay Company "denies that it has any knowledge or information sufficient to form a belief as to the truth of any of the allegations made and contained" in paragraphs first, second, third, and sixth.  The court at Special Term was of the opinion that this form of denial was insufficient and raised no issue because the matters attempted to be thus denied were of public record.  While this criticism may be well founded as to the first and second allegations of the complaint, as to which we express no opinion (see Kirschbaum v. Eschmann, 205 N. Y. 127, 98 N. E. 328), it is inapplicable to the third paragraph, which sets up the plaintiff's right and title to sue. That paragraph merely asserts that an assignment was made to plaintiff, which is not, however, alleged to be a matter of record.  It is improbable that the defendant could have any knowledge of such an assignment, and it was entitled to put plaintiff to his proof in that regard.  This denial was therefore certainly not frivolous.

[2] The positive denials of the allegations of nonpayment contained in the fourth and fifth paragraphs of the complaint were deemed to be insufficient because "payment is an affirmative defense, and cannot be raised by a mere denial."  As a general rule this proposition is unassailable, but where the nonpayment of a sum of money is a fact upon

which plaintiff bases a cause of action for the recovery of a separate and distinct sum of money, the burden of pleading and proving nonpayment of the first-mentioned sum rests on the plaintiff, and the fact of nonpayment is put in issue by a denial. This rule was clearly expressed by this court in Gruenstein v. Jablonsky, 1 App. Div. 580, 37 N. Y. Supp. 538, in the following words:

"The plaintiff here seeks to recover the whole amount of her debt and to have a personal judgment against Biersack for it, if the mortgaged property will not upon the sale bring enough to pay it. The fact that the mortgage debt is all due is not established by merely producing the mortgage. The plaintiff must prove in addition that an installment had not been paid, and that she elects to consider it all due. Her allegation that it is so is not that of a mere conclusion of law, but of a fact. Allen v. Patterson, 7 N. Y. 476, 57 Am. Dec. 542. This fact is put in issue by the answer. But it is said that part payment is an affirmative defense, and cannot be shown under a denial. That is true. McKyring v. Bull, 16 N. Y. 297, 69 Am. Dec. 696. If the suit were brought simply to foreclose for the failure to pay the installment which fell due September 1st, and the relief asked were only for that installment, it might be that the defendant, to raise that question, would be compelled to plead that he had paid it. But that failure is alleged here not merely as a failure to pay, but as one of the facts upon which the plaintiff bases her claim that a condition subsequent has not been performed, and that the whole debt has become due. Considered as such a fact, an essential one in the chain, the plaintiff must prove it. When that fact stands in such a relation to the plaintiff's case the fact of nonpayment is put in issue by a denial. Knapp v. Roche, 94 N. Y. 329. The answer is, therefore, not frivolous, and the motion for judgment should have been denied."

[3] To demonstrate the application of this rule to the present case it will be necessary to read the complaint in the light of the statute, and incidentally to consider the sufficiency of the complaint. The act provides (section 1032) as follows:

"Sec. 1032. The aggregate amount of each tax lien transferred pursuant to this title, shall be due three years from the date of the sale. Until such aggregate amount is fully paid and discharged, the holder of the transfer of tax lien shall be entitled to receive interest on such aggregate amount from the day of sale, semiannually on the first day of January and July, at the rate which the purchaser shall have bid. At the option of the holder of any transfer of tax lien the aggregate amount thereof shall become due and payable after default in the payment of interest for 30 days or after default for six months after the delivery of transfer of tax lien in the payment of any taxes, assessments or water rents, which become a lien on and after the day of the date mentioned in the advertisement of the sale as stated therein, of the tax lien transferred by such transfer of tax lien."

"Sec. 1035. If the amount of any tax lien which shall have been transferred by a transfer of tax lien shall not be paid when under its terms and the provisions of this title such amount shall be due, the holder of such tax lien may maintain an action in the Supreme Court to foreclose such tax lien."

These provisions, read together, provide that the amount of a tax lien shall become due three years from the date of sale, unless the due date is accelerated by default in the payment of interest upon the amount paid for the tax lien for 30 days, or by default for six months after delivery of transfer of tax lien in the payment of any taxes, assessments, or water rents which became a lien on or subsequent to, the date mentioned in the advertisement of sale as the date of the tax lien sold.

The complaint does not state when the transfer of tax lien was delivered to plaintiff's assignor, but it must have been at some time subsequent to April 21, 1913, alleged to have been the date of sale. Three years had not elapsed since the date of sale when this action was commenced, and it was therefore necessary for plaintiff to allege, in order to maintain the action at all, that the due date had been accelerated for one of the reasons provided in the statute, and to specify in intelligible language which reason so accelerated it. He has apparently attempted to do so in his fourth allegation that:

"The defendants have failed to pay the taxes which became due on said property, as required by the provisions of chapter 17, tit. 5, of the Greater New York Charter."

This is clearly an insufficient allegation of such nonpayment of taxes as will operate to accelerate the due date of plaintiff's lien. The statute provides that it may be accelerated if defendants have made default—

"for six months after the delivery of transfer of tax lien in the payment of any taxes, assessments or water rents, which became a lien on and after the day of the date mentioned in the advertisement of the sale as stated therein, of the tax lien transferred by such transfer of tax lien."

To properly allege acceleration of the due date of the transferred lien under this provision, the pleader should allege: (1) The date specified in the advertisement of sale as the day of the date of the tax transferred to and held by plaintiff; (2) that on or after that date taxes, assessments, or water rents became a lien on the property, and these should be stated specifically; (3) the date of the delivery of the transfer of tax lien sought to be foreclosed, with an allegation that the subsequent liens have not been paid. Even if properly pleaded, it would still be the allegation of the nonpayment of a sum of money as the basis of a cause of action to recover a separate and distinct sum of money, and this allegation would be put in issue by a denial, without the necessity of a positive allegation of payment, under the rule quoted from Gruenstein v. Jablonsky, supra.

What has already been said is sufficient to necessitate the reversal of the order appealed from. There are other omissions in the complaint to which attention is called, and which are claimed to render it insufficient.

[4] While it is alleged that the city on a given date sold a tax lien, there is no allegation that at the time of sale there were any unpaid taxes, assessments, or water rents for which the city had a lien which it could sell.

[5] It is not alleged that the necessary statutory proceedings were duly had prior to the sale. The only authority of law for a sale and transfer of the city's lien is the statute above cited, and no valid sale can be made under it unless the prescribed preliminary steps are duly taken.

[6] Nor is it alleged that the holder of the transfer of tax lien has elected to consider the amount thereof due in consequence of the failure to pay subsequent taxes, assessments, or water rents. Such failure does not ipso facto accelerate the due date, but merely gives the

holder of the transfer of tax lien the option to consider the amount as presently due. The exercise of this option is a fact to be pleaded and proved.

We do not now pass upon the validity of all of these objections to the complaint, merely calling attention to them, to the end that the plaintiff, if he elects to amend, as he must do to prosecute his action, may be advised of the possible objections he will be called upon to meet.

The order appealed from must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.